THE STATE ex inf. SEEBERT G. JONES, Circuit Attorney, Appellant, v. WEST END LIGHT & POWER COMPANY.

**In Banc, December 21, 1912.**

1. **PLEADING: Departure: Not Raised Below: Waiver.** Where no question of a departure was raised in the trial court, respondent will not be heard to contend on appeal that the facts pleaded in the reply are inconsistent with the theory and facts pleaded in the information and therefore constitute a departure from the cause of action respondent was called upon to answer. Unless the reply was challenged on that ground in the trial court, the issues, on appeal, will be treated as properly joined.

2. ———: ———: **Quo Warranto.** The State may charge the usurpation of a franchise in the information, and in the reply aver a forfeiture, without the reply being open to attack as being a departure.

3. **QUO WARRANTO: Franchise: Nonuser: Forfeiture.** When the consent of a city is required as a condition precedent to the right to use the streets in the exercise of a franchise for a public purpose, the city, in granting such consent and franchise, acts as an agent of the State, and in case of an alleged forfeiture or usurpation of such franchise the State may proceed by *quo warranto* to determine the warrant of authority in the party claiming and exercising such right. Long continued nonuser of such a franchise will work a forfeiture thereof to the State and constitutes a sufficient ground for a judgment of ouster; and a nonuser of a franchise to erect along

the streets and alleys, wires conveying electricity for the purpose of furnishing light to the public, for twenty years from the time the franchise was granted, is such nonuser as works a forfeiture.

4. ——: ——: ——: ——: Waiver: By Administrative Officers. A waiver of the forfeiture of a franchise, already complete because of nonuser, may arise from the action of the municipal legislature clothed with authority to grant the franchise. The power of waiver of forfeiture resides wholly in the municipal assembly, which in St. Louis consists of two houses; and the approval by one house and the mayor of a bond exacted by the franchise ordinance, who were authorized to approve a bond, is not such legislative waiver. The administrative officers of the city are without authority to confer upon any person or company a right to use the streets for furnishing light to the public, and hence they are without authority, singly or collectively, to waive a forfeiture of such a franchise, either as to the city or the State.

5. ——: ——: ——: ——: Estoppel: By Acts of Administrative Officers. The State is not estopped to assert a forfeiture of a public lighting franchise by the official acts of the administrative officers of the city. The State has conferred upon the legislative body of the city alone authority to grant such a franchise, and has not conferred such authority upon its administrative officers; and what they cannot do directly they cannot do indirectly, and hence the State is not estopped by any of their official acts from asserting a forfeiture.

6. ——: ——: ——: ——: By Amendment of Franchise Ordinance. Where the general ordinance granting the right to place wires conveying electricity along the streets for furnishing light to the public, enacted in 1884, provided that "the city reserves the right to alter, amend or repeal this ordinance at any time," and there was no attempt by respondent to exercise that franchise until long after 1892, an ordinance enacted in 1892 which provided that, except as to persons or companies who had previously to its enactment "accepted and complied with" the previous ordinance, the right to use the streets for any such purpose could be thereafter obtained only by express authority of the municipal assembly, took away from defendant any warrant of authority to exercise the franchise claimed under the ordinance of 1884.

7. ——: ——: ——: ——: ——: Reservation in Franchise Ordinance. The effect of the reservation in the franchise ordinance of 1884, namely, that "the city reserves the right to alter, amend or repeal this ordinance at any time," was to make it a part of the contract between the city and the respondent claiming a franchise under that ordinance, and left

the city free to repeal or to amend the terms of its contract or to withdraw it altogether at its pleasure, where respondent had done nothing towards exercising the franchise prior to the date of the amendment or repeal.

8. ——: ——: ——: ——: ——: ——: Compliance Essence of Franchise: Acceptance. The rendition of the service contemplated by a franchise ordinance is a necessary element of a franchise. It is granted upon an implied agreement that it will be used, and the rendering of service to the public is of the essence of the contract. If no public service is rendered, the franchise can be forfeited. And the mere written acceptance of the ordinance and the filing of a bond for a few years are not alone the rendition of the public service which such a franchise contemplates.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey*, Judge.

REVERSED AND REMANDED (*with directions*).

*Elliott W. Major*, Attorney-General, *Seebert G. Jones* and *Forrest G. Ferriss*, for appellant; *Lon O. Hocker* and *B. Schnurmacher* of counsel.

(1) Even assuming a franchise was acquired and that the franchise was assignable, the West End Light & Power Company acquired nothing by the assignment, since Browning, King & Co. had failed to "accept and comply with ordinance 12723," and were therefore not within the exception created by ordinance 16894. Pearsall v. Railroad, 161 U. S. 659; Grand Lodge v. New Orleans, 166 U. S. 146; Railroad v. Railroad, 166 U. S. 567. (2) Under any aspect of the case the franchise, if any there was, has been lost by long nonuser amounting to abandonment, and should be declared forfeited. State ex rel. v. Railroad, 140 Mo. 539; Morawetz on Priv. Corp., Sec. 1018; State ex inf. v. Jockey Club, 200 Mo. 34; Kavanaugh v. St. Louis, 220 Mo. 496; State ex inf. v. Loan & Inv. Co., 142 Mo. 341; 2 Spelling on Extraordinary Relief, Sec. 1814; Given v. Wright, 117 U. S. 658;

Henderson v. Passenger Co., 21 Fed. 358; Trust Co. v. Cincinnati, 76 Fed. 296; People v. Railroad, 126 N. Y. 29; Railroad v. Oswego, 92 N. Y. App. 551; Bridge Co. v. East Hartford, 16 Conn. 149; People v. Railroad, 117 Cal. 604; State v. Railroad, 40 Ohio St. 504; Railroad v. E. St. Louis, 182 Ill. 433; 3 Blackstone Comm., 362; 3 Cruise Dig., 267; 2 Cook Corp., Sec. 634; 27 Am. & Eng. Ency. Law, 55; Terrett v. Taylor, 9 Cranch. 43; Note to 8 Am. St. Rep. 179; McCutcheon v. Capsule Co., 71 Fed. 787; State v. Water Co., 98 Me. 214.

*Lyon & Swarts* and *W. M. Williams* for respondent.

(1) The informant cannot in *quo warranto,* any more than in other forms of action, set up in the reply facts inconsistent with the theory and facts pleaded in the information. Where specific grounds for ouster are pleaded in the information, other and inconsistent matters cannot be relied upon in the reply. State ex rel. v. Weatherby, 45 Mo. 1; Chitty v. Railroad, 148 Mo. 74; 32 Ency. Law and Proc., 1452d; State ex rel. v. Talbot, 123 Mo. 69; 2 Spelling on Extraordinary Relief, Secs. 1850, 1851, 1860; 17 Cyc. 457. (2) The city being competent to make the grant, and Browning, King & Co. being competent to accept it, the acceptance of the grant, and the giving of the bond by Browning, King & Co. constituted a contract which is protected by the Federal Constitution, as well as by the Constitution of this State. Bank v. Arkansas City, 76 Fed. 271; State ex rel. v. Gas Light Co., 102 Mo. 487; State ex rel. v. St. Louis, 145 Mo. 551; Cable Co. v. Baltimore, 66 Fed. 140; State ex rel. v. Railroad, 85 Mo. 263; Railroad v. Springfield, 85 Mo. 674; Knight v. Railroad, 70 Mo. 231; St. Louis v. Railroad, 85 Mo. 151; Railroad v. Railroad, 105 Mo. 577; State ex rel. v. Milling Co., 156 Mo. 620; Hovelman v. Railroad, 79 Mo. 632; Gas Light Co.

v. Louisiana Gas Co., 115 U. S. 660; State ex rel. v. Railroad, 116 Wis. 142; Wright v. Light Co., 69 N. W. 793; Light Co. v. Monett, 186 Fed. 360; Electric Co. v. Little Falls, 102 Fed. 664; Wilcox v. Gas Co., 212 U. S. 219.    (3)  The parties in 1884 having made a contract, vested property rights were thereby conferred, and the franchise being property, was assignable.    Kavanaugh v. St. Louis, 220 Mo. 511; State ex rel. v. Railroad, 140 Mo. 548; Hovelman v. Railroad, 79 Mo. 643; State ex rel. v. St. Louis, 161 Mo. 383; Lawrence v. Hennessy, 169 Mo. 67; Mayor v. Africa, 77 Fed. 507; Trust Co. v. Cincinnati, 76 Fed. 99; Louisville v. Tel. Co., 224 U. S. 661; Railroad v. Delamore, 114 U. S. 508; Railroad v. Commissioners, 112 U. S. 619; Electric Power Co. v. Tacoma, 17 Wash. 661; Carter v. Menle, 122 Cal. 367; State ex rel. v. Railroad, 85 Mo. 263.    (4)  Browning, King & Co. accepted and complied with ordinance 12723.  Ordinance 16894, amending ordinance 12723, in 1892, did not take away or attempt to take away any rights of Browning, King & Co.  It recognized that certain persons, associations and corporations prior to that time had availed themselves of its provisions, and had secured rights thereunder, and provided that from and after that date no one else could obtain such rights except by ordinance.  If the 1892 ordinance be construed to mean that the rights granted under the 1884 ordinance were taken away because of the nonuser by the grantees of such rights, then the 1892 ordinance is void, because:  (a)  It deprived Browning, King & Co. of property without due process of law in violation of the Constitution of the United States and of the State of Missouri.  (b)  The State has reserved to itself, under Sec. 2631, R. S. 1909, the exclusive right and power to declare a forfeiture of franchises by proceeding directly for that purpose.  A forfeiture of a franchise cannot be enforced or brought about

246 Mo.—42

collaterally or incidentally, or in any other manner
than by a direct proceeding by the State of Missouri.
Therefore, the city could not, by ordinance, forfeit
the franchise.  Kavanaugh v. St. Louis, 220 Mo. 517;
State ex rel. v. Jockey Club, 200 Mo. 66; State ex rel.
v. Railroad, 140 Mo. 546; Electric Power Co. v. Ta-
coma, 17 Wash. 670; Gas Light Co. v. Consumers Co.,
40 N. J. Eq. 431; Railroad v. Commissioners, 39 N. J.
L. 35; Light Co. v. Milwaukee, 36 L. R. A. 46; Indian-
apolis v. Gas Trust Co., 27 L. R. A. 514; Turnpike
Road v. State, 19 Md. 291; Utah v. Railroad, 110 Fed.
890; Railroad v. McGee, 115 U. S. 473; Lewis v. New-
ton, 75 Fed. 897.   (5)  Abandonment of a property
right can never be inferred from evidence of non-
user alone.  1 Cyc. 4, 5; State ex rel. v. Railroad, 140
Mo. 349; Investment Co. v. Railroad, 108 Mo. 62;
Curran v. Louisville, 83 Ky. 628; Dyer v. Stanford,
9 Metc. 395; Hayford v. Spokesfield, 100 Mass. 491;
Barlow v. Railroad, 29 Iowa, 276.  (6)  The right of
the State to prosecute for a forfeiture of franchise
ceases with the cause on which the information is
based.  High on Extraordinary Remedies, Sec. 667;
People v. Bank, 6 Cow. 196; People v. Bank, 6 Cow.
217; Dern v. Railroad, 19 Utah, 46.  (7)  The city, with
respect to a contract within its express powers, acting
in its private as distinguished from its governmental
capacity, may waive a breach of the contract, and be es-
topped by its conduct as to the contract, to the same
extent as individuals or private corporations. Knight
v. Kansas City, 70 Mo. 237; Railroad v. Marion
County, 36 Mo. 306; Subway Co. v. St. Louis, 169 Mo.
331; Depot Co. v. St. Louis, 76 Mo. 396; Hook v. Bow-
den, 144 Mo. App. 331; Dillon on Municipal Corp.,
Sec. 237; Herman on Estoppel, Sec. 1222; High on
Extraordinary Remedies, Sec. 621; Louisville v. Tel.
Co., 224 U. S. 662; United States v. Wagon Road Co.,
54 Fed. 881; Safety Insulated W. C. Co. v. Mayor, 66
Fed. 44; Railroad v. Triadelphia, 46 L. R. A. (N. S.)

337; State ex rel. v. Water Power Co., 32 L. R. A. 391; People v. Halliday, 29 Pac. 54; Carter v. Menli, 122 Cal. 367; Dern v. Railroad, 19 Utah, 46; State v Turnpike Co., 15 N. H. 165; Gregston v. Chicago, 145 Ill. 451. (8) The court, in considering the question of forfeiture, will exercise a wise judicial discretion, having in mind the effect of a decree of forfeiture on the grantee of the franchise, and the injury, if any, to public interests. A forfeiture has never yet been declared when its only result will be damage, both to the one exercising the franchise and to the public. State ex inf. v. Taylor, 208 Mo. 454; State ex rel. v. Weatherby, 45 Mo. 21; State ex rel. v. Mansfield, 99 Mo. App. 152; State ex inf. v. Railroad, 151 Mo. 179; Walker v. United States, 139 Fed. 412; State v. Morris, 73 Tex. 435; People v. Railroad, 50 N. E. 158; State ex inf. v. Club, 200 Mo. 68.

KENNISH, J.—This is an appeal from the judgment of the circuit court of the city of St. Louis, in favor of respondent, in a proceeding by information in the nature of *quo warranto*. The information was filed in said court at the June term, 1909, by the circuit attorney of said city, against the respondent corporation, the West End Light & Power Company. The purpose of the suit was to oust the respondent from exercising the franchise of using the streets of said city for the erection of poles and stringing of wires thereon, to be used in conducting the business of supplying electricity to the public for lighting and other purposes. An amended information was afterwards filed, to which the respondent in due time filed an answer and return. Thereupon plaintiff filed a reply and the respondent filed a supplemental answer and return, and upon the issues thus framed, a trial was had and judgment entered as above. Plaintiff appealed to this court.

The pleadings covered forty-seven pages of the printed record and are of too great length to be set out in this statement. In the view we take of the case, the material facts, as gathered from the pleadings are, briefly, as follows:

The information charges the respondent with claiming and exercising the franchise of using the streets and public places of the city of St. Louis for the erection of poles and the stringing of wires thereon, for the purpose of supplying the public with electricity, without first having obtained authority by ordinance from the city so to do, and prays the court to cause the defendant to answer and state by what warrant of authority it claims to have, use and enjoy such franchise; that a judgment of ouster be rendered against respondent, ousting it from the exercise of such franchise.

In its return to the information the respondent alleges that the city of St. Louis, on the 15th day of March, 1884, being authorized by its charter, duly enacted ordinance No. 12723. That ordinance, which is filed as an exhibit and made a part of the return, is in part as follows:

An ordinance regulating the placing of wires, tubes or cables conveying electricity for the production of light or power along the streets, alleys and public places of the city of St. Louis. . . .

Section 1. That no wires, tubes or cables conveying electricity for the production of light or power shall be placed along or across any of the streets, alleys or public places in the city of St. Louis, except as hereinafter provided.

Section 2. That all such wires, tubes or cables, along or across any of the streets, alleys or public places of the city of St. Louis, shall be placed at such distances above or below the surface of the ground and secured in such manner as shall be prescribed by the Board of Public Improvements.

Section 3. That any person or persons, corporation or association desiring to place along or across any of the streets, alleys or public places of the city of St. Louis such wires, tubes or cables, shall file in the office of the Board of Public Improvements an application therefor, stating in detail the streets,

alleys or public places which said wires, tubes or cables are to occupy, and the manner in which said wires, tubes or cables are to be secured or supported and insulated, together with a plat showing the route of such wires, tubes or cables.

Section 4. The Board of Public Improvements is hereby authorized, upon the filing of the application and plat required by the next preceding section, to grant a permit for such occupancy of the streets, alleys and public places therein named, with such restrictions, regulations and qualifications as may be prescribed by said board. . . .

Section 10. No person or persons, corporation or association, shall be entitled to any of the privileges conferred by this article, except upon the following conditions: That said person or persons, corporation or association, before availing himself or itself of any of the rights or privileges granted by this article, shall file with the City Register his or its acceptance of all the terms of this article, and agree therein that he or it will file with the Comptroller of the City, on the first days of January and July of each year, a statement of his or its gross receipts from his or its business arising from supplying electricity for light or power for the six months next preceding such statement, which shall be sworn to by such person or persons, or the president or secretary of such corporation or association; and further agree that he or it will, at the time of filing the statement with the Comptroller, pay into the City Treasury two and one-half per cent on the amount of such gross receipts up to the year 1890, and five per cent on the amount of such gross receipts thereafter. And said person or persons, corporation or association shall at the time of filing said acceptance, also file with the City Register his or its penal bond in the sum of $20,000 with two or more good and sufficient securities, to be approved by the Mayor and Council, conditioned that he or it will comply with all the conditions of this ordinance, or any ordinance which may be hereafter passed regulating the placing of wires, tubes or cables in the streets and alleys for the purposes named therein; that he or it will comply with all the regulations made by the Board of Public Improvements having reference to the subject embraced in this or any other ordinance for the purposes herein named; that he or it will make the statements and payments required by the provisions of this section, and will save the City of St. Louis harmless and indemnified from all loss, cost or damage by reason of the exercise of any of the privileges granted by this ordinance or any other ordinance which may be hereafter passed relating to the subject-matter of this ordinance. . . .

Section 13. The city reserves the right to alter, amend or repeal this ordinance at any time.

It is further alleged that on the 14th day of February, 1885, while the said ordinance was in full force and effect, Browning, King & Company, a partnership, duly accepted the provisions of said ordinance and filed a bond as therein required, which bond was approved by the mayor and council of said city, and that by such compliance with all the requirements of said ordinance, a contract was made between the city and said partnership, whereby Browning, King & Company became the grantee of a franchise from said city, to erect poles and place wires thereon along the streets and public places of said city, to convey electricity for public use. That on the fifth day of June, 1908, while the provisions of. the said ordinance were existing and in full force and so recognized by the city, Browning, King & Company caused the respondent corporation to be created and organized under the laws of this State, "with full power to engage in the manufacture, purchase and sale of electric light and power, and, with the full consent of said city, caused the franchise and rights acquired and held by the said Browning, King & Company to be transferred and assigned to said respondent on the 5th day of June, 1908." That thereafter respondent made application to the board of public improvements of said city for a permit to erect poles and string wires along certain streets therein described, which permit was duly granted; and also filed a bond, as required by said ordinance, which was duly approved by the mayor and council of said city. That respondent paid the city various sums, and has expended thousands of dollars in and about the work of preparing to exercise said franchise. That its said franchise has been assessed by the city for taxes for the year 1909 at the sum of five hundred thousand dollars, and that the city, through its regularly constituted officers, has recognized the right of respondent to exercise the said franchise as aforesaid. The prayer of the return is

that, having shown full power and authority to proceed in accordance with the law and the ordinances of said city in the exercise of said franchise, respondent's said powers and acts be fully confirmed and vindicated by the judgment of the court, and for general relief.

The reply of the circuit attorney denied the right of the respondent to exercise the franchise claimed, upon the grounds: (1) that ordinance 12723 was void; (2) that if said ordinance be valid, then that Browning, King & Company acquired no rights thereunder; (3) that if said ordinance be valid and Browning, King & Company did acquire a franchise thereunder, the same was forfeited for nonuser and for failure to comply with the terms and conditions thereof; (4) that said ordinance 12723, in the year 1892, was amended by ordinance No. 16894, by the municipal assembly of said city, by the enactment of the following in lieu of section 1, so that as amended section 1 thereof was as follows:

"That no wires, tubes or cables conveying electricity for the production of light, heat or power shall hereafter be placed along or across any of the streets, alleys or public places of the city of St. Louis by any person, corporation or association, not having previous to the passage of this ordinance accepted and complied with ordinance No. 12723, now amended, or shall be duly authorized by the municipal assembly and then only as hereinafter provided."

That the effect of said amendment was to destroy any pretended privileges or franchises claimed to have been acquired by Browning, King & Company, under ordinance No. 12723; (5) that respondent has not acquired from Browning, King & Company the privileges and franchises possessed by that partnership, if any were so possessed.

The prayer of the reply is that judgment of ouster be rendered against respondent from exercising the

privileges and franchises sought to be obtained and exercised as aforesaid, and for general relief.

Respondent's supplemental answer and return is substantially a denial of all new matter set out in the reply.

There was little conflict in the testimony introduced, and therefore we shall not set it out, but shall refer to it in connection with the legal questions discussed.

I.   A question of pleading, preliminary to an inquiry into the merits of the controversy, is raised by the respondent.   It is contended that the facts pleaded in the reply are inconsistent with the theory and facts pleaded in the information and therefore constitute a departure from the cause of action which respondent was called upon to answer.

Respondent did not challenge the reply in the trial court upon the ground now complained of, and the rule is that where the question of departure is not raised below, the court will treat the issues as properly joined.   [17 Ency. Pl. & Pr., 447; Rolling Stock Co. v. People, 147 Ill. 246.]   The case was tried upon the issues made by the pleadings.   No question of departure was raised in the lower court, and it is a settled principle of appellate procedure that a party on appeal to the Supreme Court must stand or fall by the theory upon which he submitted his case to the trial court and cannot raise issues not raised in the court below.   [Walker v. Owen, 79 Mo. 563.] Besides, there is good authority for the view that the State may charge usurpation of a franchise in the information and in the reply aver a forfeiture, without the reply being open to attack upon the ground of departure. [17 Ency. Pl. and Pr. 474, and footnotes; 32 Cyc. 1456.]

II.   After a full examination of the pleadings, the testimony and the law applicable to the questions pre-

sented, we have reached the conclusion that the respondent is not entitled to the franchise claimed and that the State is entitled to a judgment of ouster, as prayed.

Assuming that the firm of Browning, King & Company, by complying with the terms of ordinance 12723, was lawfully possessed of the franchise in controversy, and that by assignment all of the rights of that firm were transferred to and became vested in respondent, the fact remains, as shown by the testimony, that there was a nonuser of said franchise for a period of more than twenty years, being from the time it was acquired until the year 1908.

It is well recognized law that when the consent of the municipality is required as a condition precedent to the right to use the streets of a city in the exercise of a franchise for a public purpose, the municipality in granting such consent and franchise is acting as an agency of the State, and in case of an alleged forfeiture or usurpation of such franchise the State may proceed by *quo warranto* to determine the warrant of authority in the party claiming and exercising such right. [State ex rel. v. Railway Company, 140 Mo. 539; Kavanaugh v. St. Louis, 220 Mo. l. c. 517.] It is equally well settled law that long continued nonuser of such a franchise will work a forfeiture thereof to the State and constitute a sufficient ground for a judgment of ouster. [State ex rel. v. Railway Company, supra; Kavanaugh v. St. Louis, supra; State ex inf. v. Delmar Jockey Club, 200 Mo. 34; State ex inf. v. Equitable Loan & Investment Co., 142 Mo. 325; Purdy's Beach on Private Corporations, Sec. 1294; Morawetz on Private Corporations, Secs. 1014 and 1018.]

Under the facts of this case and the foregoing authorities, the State was clearly entitled to a judgment of ouster of the franchise in question upon the ground of nonuser, in the year 1908 and until Brown-

ing, King & Company executed the alleged assignment thereof to respondent. Thus far there is no difficulty in determining the rights of the parties.

The difficult questions in the case arise by reason of the official acts of certain officers of the city of St. Louis with reference to the said franchise, after the alleged transfer thereof to respondent, and also by reason of the acts of respondent in incurring expense, relying upon the assumption that the existence of its franchise had received official recognition from the city and was still in force, from all of which it is insisted by respondent that there was a waiver of the forfeiture for nonuser and also an estoppel against the city and the State to enforce such forfeiture.

The official acts relied upon as constituting a waiver and estoppel are: (1) the action of the board of public improvements in approving the alleged assignment of the franchise and granting permits to respondent to erect poles and string wires upon certain streets; (2) the action of the mayor and the council in approving the bond filed by respondent; (3) the assessment of respondent's franchise by the city assessor; and (4) an opinion by the city counselor to the effect that respondent was possessed of a valid franchise, entitling it to the use of the streets of the city as claimed.

Upon the foregoing contention, this question is presented: Was it within the power of the forementioned officers of the city to waive the right of the State to a judgment of ouster of the franchise granted to Browning, King & Company and transferred to respondent? In considering this question it must be borne in mind that Sec. 3367, R. S. 1909, under the provisions of which respondent was created and its charter powers prescribed, authorizes the corporation to use the streets and public places of the city for the purpose of carrying on its business only "with the consent of the municipal authorities thereof and un-

der such reasonable regulations as said cities may prescribe." And by Sec. 26, Art. 3 of the charter of the city, the mayor and municipal assembly are given power "by ordinance not inconsistent with any law of this State or of this charter," among other enumerated powers, "to provide for grading, lighting, cleaning and improving" the streets. The statute and the charter provision cited are the measure of the power of the city in the premises and therefore the consent or franchise of the city can be granted only by an ordinance duly enacted by the legislative body.

After a franchise has been granted by the city and a ground of forfeiture has arisen, the authorities are not in harmony as to the power of the city to waive a judicial forfeiture of such franchise by the State. The case of State ex rel. v. Railway Co., 140 Mo. l. c. 558, is cited in support of the view that there is an entire absence of such power or authority in the city. This court there said: "Moreover, the city had no power or authority by ordinance or otherwise to take away from its sovereign the right to proceed by its public officer, the prosecuting attorney of the county, against the defendant by *quo warranto* for ouster of its franchises upon the ground of their forfeiture."

On the other hand, it is contended, and such contention is not without support, that the city may, through the official acts of its administrative officers, waive such forfeiture. We do not agree with either of the foregoing views. What was said by this court in State ex rel. v. Railway Co., supra, was with reference to a provision in the franchise construed, to the effect that in case of a forfeiture, unless an action should be commenced by the city within six months thereafter to enforce such forfeiture, the city should be deemed to have waived it. That provision of the contract was interposed as a defense against a proceeding in *quo warranto* by the State, and it was in discussing the right of the city to prescribe the terms

upon which a forfeiture should be waived and thus bind the State, that the language quoted was used. In what was there said we do not think the court intended to announce the doctrine that if a ground of forfeiture existed and the same should be amicably adjusted between the holder of the franchise and the legislative body of the city—the body which was clothed with power to grant the franchise in the first instance and which could grant it again even after an adjudication of forfeiture by the State—the forfeiture would not be effectually waived as against a proceeding in *quo warranto*. Capital in vast amounts is commonly invested in such franchise rights, and in such cases it is of the greatest moment to the municipality and to the public, as well as to the holders of the franchise, that the service to the public be continuous and without interference or interruption. After a ground of forfeiture of the franchise had been adjusted to the satisfaction of the legislative body of the city, representing the public, and the holder of the franchise, it would indeed be unreasonable to hold that notwithstanding such adjustment, the prosecuting attorney, in the name of the State, could successfully maintain a proceeding to forfeit the franchise.

The other view, that administrative officers of the city may waive a forfeiture, is no less unreasonable. According to that theory, a franchise subject to forfeiture by reason of nonuser for twenty years and of little or no value, through the action of administrative officers of the city, and without legislative sanction, might become within a few days and without any return to the city, as in the case in hand, of the assessed value of five hundred thousand dollars.

We think the correct rule of law is that a waiver of the forfeiture may arise from the action of the legislative body clothed with authority to grant the franchise.

In the case of People v. Phoenix Bank, 24 N. Y. 431, it appears from the facts stated that the Attorney-General proceeded against the defendant corporation by *quo warranto* to forfeit the corporate privileges thereof on the ground of taking usury. The defendant answered pleading a waiver of the forfeiture on the ground that the Governor and Senate had appointed a director of the corporation after the date of the alleged forfeiture and that such action of the State officials amounted to a waiver. Upon that issue, the court said:

"But I must not be understood as admitting that the Governor and Senate, without the concurrence also of the Assembly, had any dispensing power. They had no more authority to waive or pardon the forfeiture than any other public officer or body of men. Indeed, the Attorney-General had more power over this matter than the Governor and Senate united; for if he refused to prosecute, the wrong charged upon defendants would go unpunished, and the corporation would continue to exist and enjoy its privileges in the same manner as though there had been no violation of the charter. Still, the neglect to prosecute would not amount to a pardon; it could only operate as a waiver so long as the omission continued, and would be no answer to a *quo warranto* whenever he, or his successor in office, might choose to insist on the penalty.

"In England where corporations may be created by royal charter, the king can pardon a forfeiture, by granting restitution; but he has, I think, no such power in relation to corporations created by act of Parliament. [The King v. Amery, 2 T. R. 568; Newling v. Francis, 3 T. R. 189; The King v. Miller, 6 T. R. 277.] So here, where corporations are created by the Legislature, that body can waive the forfeiture, by ratifying and confirming the original grant. [People v. Manhattan Company, 9 Wendell, 351.] But no other

body of men has any such dispensing power." The general rule as to waiver is stated in 40 Cyc. 266, as follows: "Waiver is usually a matter of personal privilege, and must be made by the person whose rights or remedies are to be affected, or by someone duly authorized to act for him in the matter."

It is apparent that while the mayor and council of the city were authorized to approve the bond required of the grantee of a franchise to use the streets; the board of public improvements to grant a permit as to the particular streets upon which the poles and wires should be placed; the city counselor to give an opinion as to the rights of the grantee of such franchise; and the city assessor to assess such alleged franchise, yet such officials were not clothed with any authority in the matter of consenting to the use of the streets for the purpose of the franchise. That power resided solely in the legislative body, the municipal assembly, which, under the charter of the city of St. Louis, consists of the council and the house of delegates. And as the administrative officers were without power to confer such right upon respondent to use the streets, they were without power to waive a forfeiture of such franchise, either as to the municipality or the State.

What is said above as to waiver of the franchise is also applicable to the contention that the State is estopped to assert forfeiture by reason of the official acts of the administrative officers of the municipality. We are not here dealing with the question of estoppel as between the city and respondent. The State, through the statute and the charter of the city, had conferred upon the legislative body alone authority in the matter of consenting to the use of the streets, and clearly the doctrine of estoppel could not be successfully invoked against the right to a forfeiture of the franchise, upon the ground of official action of municipal officers who had no authority from the

State in the matter of consenting to such franchise, and such officers could not do indirectly what they could not do directly.

III.   There is another ground upon which respondent is without warrant of authority to exercise the franchise claimed.

Ordinance 12723, relied upon by respondent as the source of its title, was amended in the year 1892, so that except as to persons, corporations or associa tions who had, "previous to the passage of this or dinance, accepted and complied with ordinance 12723," the right to the use of the streets as claimed by respondent could be obtained thereafter only by express authority of the municipal assembly. Sec. 13 of ordinance 12723 is as follows:  "The city reserves the right to alter, amend or repeal this ordinance at any time." The effect of this reservation was that it became a part of the franchise contract between Browning, King & Company and the city, and left the city free to repeal or to amend the terms of its contract or to withdraw it altogether at its pleasure. [1 Thompson on Corporations (2 Ed.), Secs. 153, 154; Hamilton Gaslight Co. v. Hamilton City, 146 U. S. 258; Southern Bell Tel. Co. v. Richmond, 44 C. C. A. 147.]

In Thompson, supra, it is said:  "Many of the statutes, both special and general, expressly reserve to the Legislature the power to amend or repeal all grants to corporations or amendments thereof. Such reserved rights operate on all future charters, although silent on the subject of such legislative right, and become a part of the charter or contract, as much so as if expressed in the charter itself. This is upon the plain principle that the corporation, and all persons interested, must take notice of this reserved right; and on the further principle that grants by the State to corporations are strictly construed in

favor of the State and against the corporation.''

The same rule is laid down in the telephone case, supra, as to similar reservations in franchise contracts of municipalities granting the right to the use of the streets.

If Browning, King & Company, in the year 1892, when the amendatory ordinance was passed, had not accepted and complied with ordinance 12723, then all of the rights theretofore granted to them were withdrawn by Sec. 1 of ordinance 16894, enacted in accordance with the power reserved in Sec. 13 of the original ordinance, and a judicial determination of the forfeiture became unnecessary.

The question remains: Had Browning, King & Company accepted and *complied* with ordinance 12723, at the date of the amendment in 1892, within the meaning of the said amendment? There can be no doubt that the underlying purpose of conferring upon the municipality the power to grant the franchise was the prospective service to be rendered to the public, and the benefit to the city in the receipt of its proportional part of the earnings of the grantee, as agreed upon by the acceptance of the ordinance. The rendition of such service and the payment of the amount agreed upon was an implied condition of the grant. [State ex rel. v. Railway Co., 140 Mo. 539; State ex inf. v. Loan & Investment Co., 142 Mo. 325; State ex inf. v. Delmar Jockey Club, 200 Mo. 34; Kavanaugh v. St. Louis, 220 Mo. 496.] It was only upon the condition of the exercise of the franchise that the city was clothed with power to grant it. The privilege granted was one to be used for the public good, and not a talent to be hidden in the earth. The mischief to be remedied by the amendment was doubtless the large number of such franchises being accepted and outstanding, without the city or the public receiving anything in return. Being possessed of full power under ordinance 12723 to withdraw all of said outstanding fran-

chises and to require thereafter an express legislative consent, why should the city have been solicitous to except from the scope of the amendment those who had rendered no service nor incurred any expense pursuant to their acceptance of the original ordinance? In the case of State of Missouri ex rel. City of St. Louis v. Light & Development Co. of St. Louis, 246 Mo. 618, this court, in an opinion by FERRISS, J., construing the same ordinance now under review, held that a *compliance* with ordinance 12723 required the rendition of service to the public under such franchise, as an implied condition of the grant, and that in default of such service there was not a compliance therewith. We think the reasoning of the opinion in reaching that result is sound and is well within the rule that courts will construe the law strictly as against the existence of the franchise and in favor of the public. From the foregoing it follows that after the amendment of 1892, Browning, King & Company were not possessed of the franchise now claimed by respondent, and therefore nothing passed to respondent by the alleged assignment.

Our conclusion is that the judgment should be reversed and the cause remanded, with directions that a judgment of ouster be entered in accordance with the views herein expressed.

It is so ordered. All concur except *Woodson, J.,* not sitting.