## CONTROL OF COUNCIL OVER THE PLACING OF ELECTRIC WIRES IN THE STREETS.

Court of Appeals for Hamilton County.

THE CITY OF CINCINNATI v. THE DIAMOND LIGHT COMPANY.*

Decided, February 5, 1915.

*Municipal Corporations—Authority to Place Wires in the Streets—
    Must be Obtained from Council—Consent of Abutting Property
    Owners Can Not be Substituted—Statutory Provision Against
    Granting Exclusive Rights Not Nullified Thereby—Whether Such
    Authority Has Been Wisely Vested in Council Not a Judicial Ques-
    tion—Meaning of the Word "Through" as used in Section 9193.*

Electric wires, or conduits for carrying such wires, can not be placed
    in the streets, alleys or public places of a municipality, for the
    purpose of distributing an electric current for commercial pur-
    poses, relying upon the consent of the owners of abuting property
    without obtaining the consent of council.

*Walter M. Schoenle, City Solicitor,* and *Saul Zielonka,* As-
sistant, *Miller Outcalt* and *Lawrence Maxwell,* for plaintiff.
    *Michael Muller* and *Joseph W. O'Hara,* contra.

JONES (Oliver B.), J.; SWING, P. J., and JONES (E. H.), J.,
concur.

The city of Cincinnati by its solicitor under the direction of
the city council brought this action in the court of common pleas
against the defendant, seeking to enjoin it from laying, con-
structing and maintaining wires and conduits in public streets
and alleys for the purpose of conducting electricity for power
and lighting for commercial purposes in said city.

The defendant, the Diamond Light Company, is a corporation
organized and existing under the laws of Ohio, and has con-
structed and installed an expensive and effective plant, on the
west side of Walnut street, between Fifth and Sixth streets, in
the city of Cincinnati, for the generation and distribution of

---

*Motion for order directing Court of Appeals to certify its record
overruled March 9, 1915. For a contrary opinion, see *Cincinnati* v.
*Diamond Light Co.*, 16 N.P.(N.S.), 305.

electricity, and is engaged in the business of generating and supplying electric current for light and power for commercial purposes to consumers within that city.

In furtherance of such purpose, without any consent from the council or other officers of the city of Cincinnati, said company has laid wires, and constructed conduits across the following public ways in said city: Vine street, between Fifth and Sixth streets; Hatters alley, between Walnut street and Lodge (Fountain) alley; Lodge alley, between Hatters and Thorp alleys; and Thorp alley, between Vine street and Lodge alley, below the surface of said streets and alleys without disturbing the pavements thereof. It also claims the right to use for such wires a conduit which had been constructed connecting premises on the west side of Walnut street with premises directly opposite on the east side of said street, known as the Commercial-Tribune building. It also claims the right to further extend its conduits and wires under the streets and alleys of said city for the purpose of supplying electrical current for commercial purposes to consumers.

Streets, alleys and public ways are held in trust for the public for the use for which they were dedicated or acquired, and subject to the property rights of the abutting owners they are for such public use under the absolute control of the legislative power of the state (*Louisville & Nashville R. R. Co.* v. *Cincinnati,* 76 O. S., 481). Electric light companies, in connection with telegraph and telegraph companies, are authorized to use and occupy the streets and highways of the state, county or municipality, under the provisions of Title 9, Div. 2, Sub-Div. 1, Chap. 2 of the General Code (Sections 9170 to 9198).

These laws were first enacted for telegraph companies and later were extended and applied to telephone companies by R. S. 3471 (G. C. 9191), and afterwards were applied to electric light and power companies by R. S. 3471a, which reads as follows:

"The provisions of this chapter, so far as the same are applicable, except section three thousand four hundred and sixty-one, shall apply also to any company organized for the purpose of supplying the public and private buildings, manufacturing establishments, streets, alleys, lanes, lands, squares and public places with electric light and power or automatic package car-

rier; and every such company shall have the same powers, except those given by said section three thousand four hundred and sixty-one, and be subject to the same restrictions, as are herein prescribed for magnetic telegraph companies. Provided, however, that in order to subject the same to municipal control alone, no person or company shall place, string, construct or maintain, any line, wire, fixture or appliance of any kind for conducting electricity for lighting, heating or power purposes through any street, alley, lane, square, place or land of any city, village or town, without the consent of such municipality; and this inhibition shall extend to all levels above and below the surface of any such public ways, grounds or places, as well as along the surface thereof; but this inhibition shall not be applicable to any rights which have heretofore been received and exercised through proceedings of any probate court. Any person or company violating any portion of the inhibition aforesaid shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, be fined in any sum not less than one hundred and not more than five hundred dollars. The means thus created for enforcing said inhibition shall be held to be only cumulative to any other lawful means open to the municipality by way of injunction or otherwise; and this act shall apply to actions and causes of action or proceeding named in section seventy-nine of the Revised Statutes, except such as may be pending on error, and not on appeal, in any circuit court of the state.''

The substance of this section now appears in the General Code in Sections 9192, 9193, 9194 and 12644.

By force of these statutes, therefore, permission is given to an electric light company such as the defendant to use the streets and public ways in a city or village, but such use is placed under municipal control, and can be had only with the consent of the municipality, subject to such conditions as it may see fit through its council to impose.

Under the provision of Section 9178, G. C., which applies to telegraph or telephone companies, where the company fails to agree with the municipal authorities of the city or village as to the mode of use of the streets and public ways it is authorized to bring a proceeding in the probate court to procure from such court an order or judgment directing in what mode its line shall be constructed. This provision has been upheld in *Zanesville* v. *Telegraph & Telephone Co.*, 64 O. S., 67. But by the express

provision of Section 9192, G. C., this proceeding is not applicable to an electric light company. And it has been held in *Telephone Co.* v. *Cincinnati,* 73 O. S., 64, that such proceedings in the probate court could not be had for the purpose of authorizing the construction and maintenance of underground wires and pipes or conduits for a telephone company, but that the consent of the city was an essential condition for their construction. In the opinion of the court, at page 81, the following language is used:

"But taking the section of the statutes as a whole and considering the conditions imposed on the exercise of such right, it is not to be inferred that the municipal authorities are stripped of all power to finally determine any matter relating to the general subject. It will be remembered that by Section 2640 those authorities are given the control of the streets and are required to keep them open, in repair, and free from nuisance. It is to be noted, also, that by no statute is power given any tribunal to authorize permanent structures upon or in, or the use of any street, which will incommode the public, the dominant purpose being to facilitate public travel and transportation. *Railway Co.* v. *Tel. Assn.,* 48 O. S., 390; *L. S. & M. S. Ry. Co.* v. *Elyria,* 69 O. S., 414. It seems, therefore, clear that there is no power in the probate court to authorize or direct the construction of conduits in subways under the streets of a city in the absence of consent by the municipal authorities."

This principle has been recently re-affirmed in the case of *Telephone Co.* v. *Columbus,* 88 O. S., 466. The court in its opinion, at page 468, using the following language:

"It has been decided by this court that 'the statutes of Ohio do not confer power on the probate court to grant to a telephone company the right to put its wires and apparatus in conduits under the streets of a city in the absence of consent by the municipal authorities.' *Queen City Tel. Co.* v. *City of Cincinnati,* 73 O. S., 64."

It is contended, however, by the defendant, that the consents of abutting property owners provide sufficient authority for the defendant to lay, construct and maintain said wires and conduits in the streets. There is no question but that an owner of abutting property has a certain right to the use of the land in a public street for access, light and air to his property, and possibly other uses not inconsistent with the rights of the public

for travel and other purposes of such highway. This interest of adjoining lot owners in the street on which their land abuts has been recognized as a property right which is protected by the Constitution, by our Supreme Court, in numerous cases *Crawford* v. *Delaware,* 7 O. S., 459; *Street Ry.* v. *Cumminsville,* 14 O. S., 523; *Railroad* v. *Williams,* 35 O. S., 168; *Daily* v. *State,* 51 O. S., 348; *Callen* v. *Elec. Light Co.,* 66 O. S., 166.

The question of the right of the owner or owners of property, located on opposite sides of the street, to connect such property for their own purposes by an electric wire, has been considered in the cases of *Henry* v. *Cincinnati,* 1 C.C.(N.S.), 289, and *Butler* v. *Cincinnati,* 2 C.C.(N.S.), 376. But it is not necessary to consider or discuss that question in this case, as no property owner is a party here, and the defendant does not claim on behalf of any property owner, or that in laying, constructing or maintaining any of the wires or conduits it represented any property owner as his agent, or acted for or on behalf of him, but insists that the wires and conduits were laid and maintained by it with the consent or permission of the property owners for the purpose of its business. The defendant, therefore, relies upon the consent of the abutting property owners, which it insists can be taken instead of the consent of the municipal authorities. Whatever the rights of a property owner on his own behalf might be, there is no authority of law to substitute his consent for that of the city. The evidence that has been introduced goes only to the extent of a permission or consent on the part of the owners of property, to the construction and use of such wire but does not in any case pretend to operate as a grant or conveyance of property rights in the street or alley to such defendant.

Defendant also claims that the enactment by council of the general ordinance No. 4285, providing general terms and conditions regulating the business of electrical illumination within its corporate limits, has in effect provided a general consent to all such companies and exhausts the subject of regulations and conditions, and that any company can, by observing the terms of such ordinance in all particulars, carry on such business with all necessary rights in the public highways. This ordinance is

found as Section 647 on page 265 of the Code of Ordinances of Cincinnati (1910-1913), and also appears at page 407 of the Code of Franchises of the city of Cincinnati (1914). It lays down general provisions which shall be applicable to all such companies, and the first paragraph of the ordinance shows, in its terms, that it is not intended to be a general grant to all companies, but simply states general provisions that shall apply to special grants. The opening paragraph is as follows:

"That whenever permission is by ordinance granted to any person, company or corporation to engage in the business of electrical illumination, it shall be under the following express terms and conditions."

This ordinance would not prevent council, in making any particular grant, from imposing any other provisions and conditions not found therein, in addition to or different from those of the ordinance. This ordinance can not be construed as granting a consent to the defendant company within the terms of the statute.

Counsel for defendant have argued with great ability that the word "through," as it appears in G. C., 9193, should be construed so as not to include "across," but rather to inhibit the laying of wires "along" the streets and alleys of the city, unless the terms of the section are complied with. In the interpretation of a statute words in common use are to be construed in their natural, plain and ordinary signification. And if the words are free from ambiguity and doubt, and express plainly, clearly and distinctly the sense of the framers of the instrument, there is no occasion to resort to other means of interpretation (*Slingluff* v. *Weaver*, 66 O. S., 621, 627). The word "through" includes both "along" and "across." It is defined in the Century Dictionary: "from one side or end to the other side or end"; and in the Standard Dictionary: "from one end, side or surface to the other." The statute must, therefore, be construed to apply to such wires and conduits as those which have been laid and constructed by the defendant.

It is further argued on behalf of defendant that the city, by the refusal of its council to act upon the application of the defendant for its consent to the laying of the wires and conduits

mentioned in the petition, has practically nullified the provisions of Section 9171, G. C., which prohibits exclusive rights, and that therefore the plaintiff does not come into court with clean hands; that the plaintiff has not shown any injury to itself or to the public; that the Union Gas & Electric Company is the moving spirit in this litigation and any damage to it should not be considered; and that the plaintiff has entirely failed to establish that clear and unexceptional right necessary to entitle it to the extraordinary remedy by injunction which it seeks.

The answer of the defendant admits that the action was brought at the direction of the council of the city of Cincinnati, and avers that the council has granted the right to different firms, persons and corporations to cross the streets and alleys of said city, above and below the surface thereof, with wires and conduits for the conveyance of electrical current and for other purposes for their own and for commercial uses and these facts appear from the evidence.

The care, supervision and control of the streets is vested in council by Section 3714, G. C., and Section 9194 gives express authority to enforce the terms of Section 9193 by way of injunction in addition to the penalty provided by Section 12644, G. C., and other remedies that might be authorized by law. The fact that the Union Gas & Electric Company may have vital interest in the matter and may have exerted potent influence upon the members of council in refusing to grant the desired consent to the defendant company and also had its counsel assist the city solicitor in the presentation of this case, does not change the legal status of the city of Cincinnati in its right to insist upon the enforcement of this statute. The question as to whether consent of the city should be given to the defendant is a matter of legislative policy to be determined by the council and officers of the city, and is not a judicial question for the determination of the court.

If the action of council in refusing to grant consent to a company to lay wires and construct conduits for electric lighting, results to the disadvantage of the citizens and property owners of the community, that is a matter that can be rectified by a

change in the personnel of such council and public officials. Where the legislative authority has exercised its power in a manner that might be considered unwise or against the interest of the city or its citizens, the judiciary are not for that reason authorized to intervene and substitute the views of the court for those of the municipal authorities. The determination of whether consent should or should not be given, is vested in the council of the city. It has refused such consent, whether wisely or unwisely, and no fraud or improper methods on its part having been shown by the evidence, it within the power of the city to insist upon its authority under the statute, and rather than take the matter into its own hands by removing the wires and the conduits or undertaking to cut them off, it has very properly submitted the question of its rights in the premises to the court by asking for an injunction. The law having provided that no such wires and conduits shall be laid or constructed without the consent of council, the injunction sought must be allowed.