HOLLAND REALTY & POWER COMPANY and SEVENTH STREET REALTY & POWER COM- COMPANY v. CITY OF ST. LOUIS, ARTHUR I. JACOBS et al., Appellants.

Division One, April 10, 1920.

1. **MUNICIPAL CONSENT: By Ordinance.** Where the statute requires that the consent of the city to the laying in its streets or alleys of conductors of electricity, water or gas be given by the "municipal authorities," they mean that such consent is to be given by the legislative authorities acting by an ordinance.

2. ————: ————: **Wires in Alley: Waiver: Acquiescence: Estoppel.** When the consent to lay electric wires by a corporation under the surface of a public alley adjoining its building can be by statute obtained only of the city's legislative assembly and in a particular mode (in this case only by ordinance), the administrative officers of the city cannot waive the necessity of procuring consent from the assembly, nor can they, by acquiescing in such use of the alley, estop the city to terminate the use.

3. **WIRES IN PUBLIC ALLEY: Cognate Statutes: Power of City to Forbid Use.** Section 3367, Revised Statutes 1909, empowering a company, organized to serve a city with water, gas or electricity, to lay conductors, adapted to convey the substance it is formed to furnish, through the streets and alleys, "with the consent of

the municipal authorities" and subject to the reasonable regulations such authorities may impose, and Section 9947, relating to electrical corporations alone and conferring on cities power to authorize them, whether organized to supply the city with light and power or to serve a smaller patronage, to use the public ways, are cognate statutes and must be construed together for the purpose of ascertaining what measure of power, to control the use of these public ways by electric companies, the Legislature intended to invest in municipalities; and such inquiry is material in determining whether the city can terminate the use by a company which did not have the consent of the municipal authorities to construct its electric wires in public alleys, for if the authority of the city went no further than to regulate the mode of use, and fell short of power to grant the privilege on any terms, much could be said against the right of the city to remove the wires, if the company had been willing to accept a permit from the city and submit to its rules.

4. ———: ———: ———: Refusal of Permission. The language of Section 3367 and Section 9947, Revised Statutes 1909, excludes any other meaning than that the municipal authorities of cities are vested with the right to grant or refuse permission, in their discretion, to an electrical company to place its wires, either above or below ground, in a public alley or street. Section 9947 especially, and particularly the words "may by ordinance authorize any company" therein, delegated to the municipal authorities power to grant or refuse permission to use, as well as to regulate the use of, streets by an electrical company, while the words "subject to such rules, regulations and conditions as shall be expressed in said ordinance" conferred on the municipal assembly power to impose terms in making the grant.

5. ———: ———: ———: Ownership of Fee: Permission of Abutters: Municipal Consent. The State can grant or refuse corporate franchises at will; and in granting them, may impose, on the exercise of them, any terms it chooses. So that where the State granted a franchise to an electrical corporation and conferred on it power to occupy public ways in a city with its electric wires only on condition of the consent of the municipal authorities being given, and no such consent was given, the fact that it owned the fee in the alley in which, under ground, it laid its wires, to the center thereof, and obtained permission of the abutting owner, who owned the fee of the balance of the alley, to lay its wires therein, does not prevent the statute from applying; but, despite its title to the fee and the permission of its adjacent fee-holder, by laying its wires in the alley, without the consent of the city, it violated and still violates both the statutes and the municipal ordinance, which provides against the placing of "wires, tubes or cables conveying

electricity for the production of light, heat or power, unless duly authorized by the municipal assembly."

6. **INJUNCTION: Mere Technical Right: Damage.** An injunction is often denied where the only purpose or effect of it would be to restrain the violation of a mere technical right, from which no damage will ensue because of its refusal; and particularly is this true when the writ would operate oppressively, or contrary to the real justice of the case.

Appeal from St. Louis City Circuit Court.—*Hon. Rhodes E. Cave,* Judge.

REVERSED AND REMANDED (*with directions*).

*Charles H. Daues* and *H. A. Hamilton* for appellants.

(1) The power of the respondents to lay and maintain electric wires and cables in and through the public streets and alleys of the City of St. Louis is dependent upon obtaining the consent of the city therefor. R. S. 1909, sec. 3367; Lockwood v. Wabash Railroad Co., 122 Mo. 86; Grand Avenue Ry. Co. v. Lindell Ry. Co., 148 Mo. 637. (2) The consent of abutting property owners to the laying and maintaining electric wires and cables in the public alleys cannot be substituted for the consent of the City of St. Louis required by law. City of Cincinnati v. Diamond Light Co., 4 Ohio App. 177. (3) The City of St. Louis has inherent power to enact ordinances providing reasonable regulations governing the laying and maintaining of electric wires and cables in and through the streets and alleys of said city. Laclede Gas Light Co. v. Murphy, 130 Mo. 10; Westport v. Mulholland, 159 Mo. 86; Plattsburg v. People's Tel. Co., 88 Mo. App. 306; Carthage v. Garner, 209 Mo. 688; State ex rel. v. City of Elizabeth, 39 Atl. 683; Colegrove Water Co. v. Hollywood, 90 Pac. 1053.

*Walter C. Guels* for respondent.

(1) The title to the strips of ground included in the alleys in question is in the abutting owners and they

are the owners in fee thereof and are entitled, as a matter of right, subject to municipal and public regulation, to make any beneficial use of the soil thereof consistent with the prior and paramount rights of the public therein for street purposes proper. Gordon v. Peltzer, 56 Mo. App. 599; Brown v. Carrollton, 122 Mo. App. 276; Felhauer v. City of St. Louis, 178 Mo. 646; Cartwright v. Tel. Company, 205 Mo. 133; Kansas Natural Gas Co. v. Haskill, 172 Fed. 567; Alden v. Boston, 159 Mass. 324, 38 Ann. St. 423. (2) Ordinances and regulations relating to the use of public alleys and the like by public utility corporations for public purposes cannot prevent abutting owners of the fee in said alleys from using them properly for lawful private purposes. Williams v. Road Co., 21 Mo. 580; Hannibal Bridge Co. v. Schaubacher, 57 Mo. 582; Julia Bldg. & Loan Assn. v. Bell Tel. Co., 88 Mo. 258; Colegrove Water Co. v. Hollywood, 90 Pac. 1053, 13 L. R. A. (N. S.) 904. (3) Acquiescence on the part of the City of St. Louis in long continued use of the sub-surface of the alleys in question by the abutting owners for private purposes without interfering with the rights of the public therein is equivalent to express permission. Julia Bldg. & Loan Assn. v. Bell Tel. Co., 88 Mo. 258, 266.

GOODE, J.—This suit was filed by the Holland Realty & Power Company, a corporation (hereinafter called the Holland Company), to have the defendants enjoined from cutting, removing or in any way molesting a small cable and wires of plaintiff, used at first by the Holland Company and now by Seventh Street Realty & Power Company, to convey currents of electricity to a building owned by plaintiff and some adjacent buildings. The lot of plaintiff is on the west side of Seventh Street in the City of St. Louis, and is bounded by that street on the east and by alleys on the north, west and south. A building known as the Holland Building stands on the lot, and rooms in it are let to tenants. Across the alley on the north is the Republic Building; across the alley to the west, the Watsonia Building, and across

the alley to the south a structure known as the South Buildings. Besides the Holland Building, an electric light plant was constructed ten or twelve years before this suit was commenced, on the premises, which we will designate as the Holland lot. The title in fee to the ground occupied by the several alleys is owned by the respective abutting proprietors to the middle line of the alleys. After the power plant had been put on the Holland lot, but just when is not shown, the Holland Company, with the consent of the adjacent proprietors, extended a small cable under the surface of the west alley to the Watsonia Building, and a wire under the alley to the north to the Republic Building, and a wire under the alley to the south to the South Buildings; and by those means of transmission, conveyed currents of electricity into the three buildings, thereby furnishing light to the occupants of them and also to persons occupying other buildings in the same block the Watsonia is in. Plaintiff avers this business has been "going on for some time past," without averring how long. The cable and wires are several feet beneath the surface of the alley, but the exact depth is not given in the evidence. The defendants, other than the City of St. Louis, are officials of the city and constitute its Board of Public Improvements. The defendants notified the Holland Company to remove the wire by December 6, 1910; but the company omitted to comply with the order, and when this action was begun, defendants were preparing to cut and remove the cable and wires, because the Holland Company had laid them across the alleys without having complied with an ordinance of the city, which provided that "no wires, tubes or cables, conveying electricity for the production of light, heat or power, shall hereafter be placed along or across any of the streets, alleys or public places in the city, by any person, corporation or association not having previous to the passage of the ordinance, 16894, approved October 26, 1892, accepted and complied with Ordinance Number 12723, now amended; or unless duly authorized by the municipal assembly, and then only as

provided by ordinance.'' The excerpt quoted is from Section 1093, Revised Code (1907) of St. Louis. It is conceded the Holland Company had not accepted and complied with Ordinance No. 12723, when it laid the cable and wires, nor had it been authorized to lay them by an ordinance of the municipal assembly of St. Louis. The provisions of Ordinance 12723 are nowhere shown in the record, nor are they material to the case, in view of the admission that the Holland Company had not complied with them, nor obtained special authority from the city to lay its cable and wires. A cross-complaint was filed by the defendants, asking a mandatory injunction to compel the removal of those appliances.

After the institution of the suit, the Seventh Street Realty & Power Company (hereafter called the Seventh Street Company), was incorporated, became the owner of the Holland premises, including the electric power plant, and, by agreement of parties, was made the plaintiff. Both it and the Holland Company were empowered by their charters to furnish light, heat and power to the tenants of their property and to other persons, and to do all acts incident thereto. No averment of the petition was denied, except that the plaintiff had the right to lay and maintain the cable and wires under the surface of the alleys. The only witness was the secretary of plaintiff, and he testified the cable and wires were laid several feet below the surface of the alleys and in no manner interfered with the use of the latter by the public or the city; that they were safely constructed and never have been to any extent, a source of danger to persons or property. In their answer the defendants avow that unless the wires and cable are removed, or an injunction granted, defendants will cut and remove them.

The court below dismissed the cross-complaint and made permanent the temporary injunction theretofore issued in favor of plaintiff, restraining defendants and their successsors, agents, etc., from ''interfering with the electric wires, cables and connections of plaintiff until such time as the present use by plaintiff interferes in any way with any proposed use by the city'' or the ten-

ants of the several adjacent buildings. In the decree, the court made findings of facts, to-wit: that with the consent of the owners of the properties abutting on the alleys, ten or twelve years before the institution of this proceeding, the Holland Company had laid the electric wires and cable, several feet under the surface of the alleys and across the same, without permit or ordinance right from the city, and had maintained those appliances ever since in accordance with the city's requirements; that the appliances were safely constructed and laid, were not and never have been a source of danger, inconvenience or harm to persons or property, and interfere in no way with any use or proposed use to which the public, or the City of St. Louis, has or will subject the alleys; that the original and the present plaintiff have operated an electric lighting plant on said lot, according to the authority of its charter, and have furnished therewith light and power to various persons in its own and the surrounding buildings; that defendants had threatened and were about to cut the wires, an act that would work irreparable damage to plantiff and for which no adequate remedy at law existed, because the amount of damage could not be definitely ascertained. The defendants took this appeal.

The section of the statutes on which the defendants rely for authority in the city to enact the ordinance forbidding conductors of electricity to be placed along and across streets and alleys without municipal authority, provides generally that corporations formed under the article, of which the section is a part, for the purpose of supplying towns, etc., with gas, water or electricity, shall have the power to lay conductors for conveying those substances through the streets and alleys "with the consent of the municipal authorities thereof, and under such reasonable regulations as said authority may prescribe." [R. S. 1909, sec. 3367.] Another pertinent section is the one which empowers a city, town or village, to authorize, by ordinance, any company organized to supply electric light and power, and incorporated under the laws of the State, to place its "wires and other fix-

tures along, across or under any of the public roads, streets, alleys or public places, within such city, town or village, subject to such rules, regulations and conditions as shall be expressed in said ordinance." [R .S. 1909, sec. 9947.]

I. The record contains nothing of allegation or evidence, to show either knowledge by the city officials of the laying of the wires under the alleys when it was done, or how long before the city's demand for their re-

**Waiver.** moval those officials learned they were located therein. The court below found the wires were laid and their use begun ten or twelve years before the filing of this suit; but this finding went beyond what the record warrants. The case stands mainly on the admissions in the pleadings, only one person having testified, and his testimony was about nothing except the depth at which the wires lay and their harmlessness.

The statutes cited required the consent of the city to be given by the "municipal authorities;" and this means the legislative authorities acting by an ordinance. [4 McQuillin, Munic. Corp. sec. 1642, p. 3433; State ex inf. v. Light & Power Co., 246 Mo. 653, 666.] The general ordinance on the subject required consent to be granted in the same mode, unless a prior ordinance had been complied with, and admittedly it had not. Besides, the parties, stipulated that the pleadings in the case, and the stipulation itself, should constitute an agreed statement of the facts whereon the case was submitted; and the answers alleged the wires were laid and had been maintained without municipal authority.

When consent to use a city's public ways can be obtained only from its own legislative assembly and in a particular mode (in this case by an ordinance) the administrative officers cannot waive the necessity of procuring consent from the assembly, and in the prescribed mode. Neither can they, by acquiescing in the use of a public way by a utility corporation, estop the city to terminate the use. [Dugdale v. Light & Power Co., 195 Mo. App. 243, 256; Town of Bangor v. Bay City Traction

Co., 147 Mich. 165, 11 Ann. Cas. 293, and note on p. 297; Mullins v. Kansas City, 188 S. W. 193, 197; Detroit v. Railway Co., 60 Fed. 161; Louisville Trust Co. v. Cincinnati, 76 Fed. 296, 316.]

The last case cited is a striking application of the doctrine; for the railroad company concerned therein had, at great expense, changed its motive power from horse power to electricity, pursuant to resolutions of the city's Board of Public Affairs, after the railway company's franchise in the streets had expired. It was held the Board of Public Affairs could not estop the city by its resolutions to deny the company's right to use the streets any longer; and, further, that the non-action of the city government after the expiration of the franchise in failing to insist on the removal of the tracks worked no estoppel. Equally strong is the language of TAFT, J., in Detroit v. Railway Co., 60 Fed. 161, 166, in holding there could be no estoppel of a city by reason of the expenditure of much money by a street railway company, on the faith of a grant of street privileges, to deny the validity of the grant. The opinion critically examines decisions supposed to sustain an estoppel under such circumstances, and also the argument of an eminent author in favor of applying the doctrine of estoppel to municipalities in rare instances, showing clearly that no authority existed which would preclude the city to prevent, by an injunction, the railway company from occupying the streets and running cars over them. Speaking of the argument of Judge Dillon, the court said;

"And while Judge Dillon is of the opinion (in which he is supported by many authorities) that an estoppel may be asserted against a municipal corporation to defeat its attempt to oust persons asserting private rights in a public street, he says that such cases are exceptional, and must depend on their own peculiar circumstances. But nowhere in this valuable work does he intimate, and no authority has been cited which holds, that a municipal corporation can be estopped *in pais* to deny a grant in the street to a railway corporation or

other person when the statute prescribed for the corpo
ration a particular mode of making a grant." [60 Fed.
l. c. 166.]

In two decisions which construed the very statutes
and ordinance under present consideration, this court
ruled that the executive officers of St. Louis could not
waive a forfeiture for non-user of privileges in the
streets which had been given by ordinances to companies
formed to furnish electric light and power, the com-
panies having failed, over a long period, to serve the
public. [State ex inf. v. Light & Dev. Co., 246 Mo. 618;
State ex inf. v. Light etc. Co., Ibid, 653.] The defendants
cannot be held to have lost, by acquiescence, whatever
right they may have had to remove plaintiff's wires
from the alleys.

II. The first of the two sections of the statutes we
have quoted embraces within its provisions water, gas
and electrical companies, organized to serve a city, town,
or village, and empowers a company of either kind to lay
conductors, adapted to convey the particular
substance or force the company is formed to
furnish, through the streets, etc., "with the con-
sent of the municipal authorities," and subject
to the reasonable regulations the authorities may impose.
[R. S. 1909, sec. 3367.] The other section relates to
electrical corporations alone, and confers on cities, towns
and villages, the power to authorize those companies,
whether organized to supply the city with light and
power or to serve a smaller patronage, to use the public
ways. The two sections are cognate and should be con-
strued together to ascertain what measure of power,
to control the use of these public ways by electric cor-
porations, the Legislature intended to vest in munici-
palities; a material inquiry in one view of this case;
for if the authority of the defendant city went no fur-
ther than to regulate the mode of use of its streets and
alleys by such companies, and fell short of the power
to refuse to grant the privilege on any terms, much could
be said against the right of the city to remove plaintiff's

*Consent of City: Statutes.*

wires, if plaintiff has been willing to accept a permit from the city and submit to its rules.

In our opinion the language of both sections excludes any other meaning than that the municipal authorities of the State are vested with the prerogative to grant or refuse permission, in their discretion, to an electrical company to place their appliances in the public ways, either above or below ground; and this is particularly true of the section relating exclusively to that kind of corporation. Had the Legislature thought the wiser course would be to reserve the power to grant directly to such corporations the franchise to use streets, and restrict municipal control over the companies to an exercise of the police power, it could have done so—can yet at any time. But instead, the power to grant or refuse, as well as to regulate, the use of the streets was delegated to the municipal authorities. The words, "may by ordinance authorize any company," etc., in Section 9947, lodge with the municipal assembly the duty and the right to determine whether or not to grant permission, while the words, "subject to such rules, regulations and conditions, as shall be expressed in said ordinance," confer on the assembly or council the power to impose terms in making a grant. And these words in Section 3367, "and such corporations shall have the power to lay conductors . . . with the consent of the municipal authorities thereof and make such reasonable regulations as said authorities may prescribe," subject the right of the company to place appliances in the streets, to the will of the legislative department of the city. This is the effect universally ascribed, we believe, to statutes relating to public utility corporations, if the franchise to place their appliances in public ways, instead of being directly granted in their charters (whether the charters be special acts or a general statute for incorporating companies) is left to the decision of the municipal legislative bodies. [3 Dillon, Mun. Corp. (5 Ed.), sec.1226; 4 McQuillin, Mun. Corp. sec. 1629, p. 3406, and cases cited; Southern Bell T. & T. Co. v. City of Richmond,

103 Fed. 35, 37; City of Chester v. Railroad, 217 Pa. St. 402; Suburban Light Co. v. Boston, 153 Mass. 200.]

A recent case to that effect, decided by a tribunal of high authority, was Toronto Elec. Light Co. v. Corporation of Toronto, A. C. 1917, p. 84, 31 D. L. R. 577, wherein the Privy Council of England refused to restrain the City of Toronto from cutting down and removing an extensive and costly system of lighting instrumentalities constructed in good faith by the company, thinking it had the right to occupy the streets by reason of an implied agreement with the city. The statute involved required an agreement between the company and the city, before the former could use the streets, and this was held to mean a formal agreement and to exclude an implied one. But the point in decision relevant to the case in hand, was that the statute vested the city with the power absolutely to prevent the company from constructing and maintaining its appliances in the streets; whereas the company contended that, as it held, by its letters of incorporation, the franchise to lay pipes and wires, set up poles, etc., the proper interpretation of the statute requiring the city's consent, was that the city could go no further than to prescribe the mode of exercise of the company's said franchise, and if the city should absolutely refuse to consent, it could be compelled to do so on reasonable terms. The judgment to the contrary was rendered upon language no stronger, in respect of investing the city with control, than is that of our statutes (A. C. 1917, p. 84).

In a case where a railroad company asserted the right to lay a track in a street of St. Louis, this court passed upon the effect of words similar to those in the statutes we are concerned with. The railroad company based its claim on an ordinance granting certain rights in the streets to a predecessor company and on a permit from the mayor, both of which were held to give the litigant company no license to lay the track in question. The company had been organized under Article II, Chapter 42, Revised Statutes 1889, and in Section 2543 of the article, where various powers were conferred on railroad

companies organized pursuant thereto, was this clause: "Nothing herein contained shall be construed to authorize . . . the construction of any railroad not already located in, upon or across any street of a city." In consequence of that statutory provision and of a section of the Scheme and Charter of St. Louis, which vested the power in the mayor and assembly to grant, by ordinance, a franchise to a railroad company to lay tracks in a street, the claim of the railroad company was held to be without merit, as it had not obtained permission from the mayor and assembly. [Lockwood v. Wabash Ry. Co., 122 Mo. 86, 95.]

It should be stated in this connection that the agreed facts throw no light on the reason for the city's resolve to have plaintiff's wires removed, but leave us uninformed as to whether this course was taken arbitrarily or because the plaintiff refused to ask a permit to keep them in the alleys and submit to the city's rules. The ordinance governing the issuance of permits is pleaded in the answers and may be read in the case of State ex inf. v. Light & Power Co., 246 Mo. l. c. 660. The actual issuance of permits, after they are authorized by the Municipal Assembly, to lay along the streets and alleys cables and wires to convey electricity, is entrusted to the Board of Public Improvements of the city, subject to several conditions, compliance with which, by the company applying for a permit, must be exacted by the board. The prescribed conditions are intended to insure the placing of the appliances in a manner that will prevent them from being dangerous; and also to compel the companies to pay the city a percentage of their gross receipts. That request for a permit has been made by the plaintiff, or its predecessor the Holland Company, accompanied by an offer to comply with the requirements of the ordinances, was a fact necessary to be shown by the plaintiff in any contingency except the one to be immediately noticed.

III.   Plaintiff is not only a corporation chartered under the laws of the State; it is also an owner of ground **Owner of Fee.** abutting on the alleys crossed by its wires, and of the title in fee to half the width of the alley, as was its predecessor.  The principal contention of the plaintiff, and the main ground of the decree in its favor, is that, in the capicity of abutting owner, the Holland Company had the right, with the permission of the opposite abutters, to run the wires under the alleys, without procuring the city's consent, and plaintiff has the right to maintain them there.

To what extent, and for what purposes owners of abutting property, who likewise hold title to the fee of the highways, may use the surface of the highway or the space above or below the surface, is a question so involved in uncertainty by the conflict of authority, as to wring a complaint from the highest court of the country.  [Sauer v. New York, 206 U. S. 536, 548.]  The law of the subject is stated usually, by courts and commentators, in clear and positive language, but in the application of the law to the varities of uses which have been presented for adjudication of the issue as to whether they fell within an abutter's rights, there is much disagreement.  The doctrine in this State and generally, is, that the owner of the fee in a public way of any kind, and perhaps the holder of equitable easements in a street when the city or town owns the fee, may devote his property to such private purposes as suit him, in so far as those purposes are compatible with the needs and convenience of the general public, including in the paramount right of the public in city streets, all contemporary urban usages and all future ones that may develop with the progress of science and social changes. [Cartwright v. Telephone Co., 205 Mo. 126; Ferrenbach v. Turner, 86 Mo. 416; 2 Elliott, Roads & Streets (3 Ed.), sec. 876.] Specific benefits which the Missouri decisions have held the abutting owner is entitled to take from his fee, subject to the municipal police power are vaults under sidewalks, stairways to basements, areas for lighting cel-

282 Mo.—13

lars, coal chutes, shade trees, passways under the sur-
face and possibly others. [Fehlhauer v. St. Louis, 178
Mo. 635; Pemberton v. Dooley, 43 Mo. App. 176; Gordon
v. Peltzer, 56 Mo. App. 599; Jegglin v. Roeder, 79 Mo.
App. 429, and cases supra.] Elsewhere underground
drains, flumes and private sewers which cross streets
have been sanctioned as lawful, to enable feeholders to
make their ownership beneficial. [Perley v. Chandler, 6
Mass. 455; Clark v. Fry, 8 Ohio St. 358; Ellsworth v.
Lord, 40 Minn. 337.] We can think of nothing in the na-
ture of wires conducting currents of electricity, which
should exclude them from being placed under a highway
by an abutter who owns the soil, if laid so as to prevent
them from endangering persons or property; for they
take up little space and are no more likey to hamper the
public than drain pipes. Adjudications on the propriety
of this use are lacking; probably because electricity has
been employed only recently as a lighting and mechanical
power; but two or three cases of gas and water uses
have been cited for plaintiff as directly in point on this
question. In one of them a natural gas company ob-
tained by contract with the owners of lands abutting
on public highways, license to lay and maintain pipe
lines over and across the highways as a means of trans-
porting natural gas without the State, contrary to an act
of the Legislature. The State contended its control
over the public highways rendered nugatory the per-
mission obtained from the owners of the soil, and, fur-
ther, that the State might exercise the same absolute
prerogative to deny to the plaintiff the privilege claimed,
as a city might is the case of its streets. The court de-
nied the analogy, on the ground that cities usually owned
the fee of their streets; whereas the fee of highways in
Oklahoma was in the abutting land owners. That dis-
tinction does not weaken the force of the decision as a
precedent for the case at bar; for the City of St. Louis
does not own the fee to the alleys in question.

In a case which closely resembles, in many features,
the one at bar, the Supreme Court of California granted
an injunction against city officials to prevent them from

interfering with water conduits or pipes laid across a city street by an adjacent proprietor, who owned the fee in the street to its center and had obtained permission from the opposite proprietor. The purpose was to convey water underground to nearby orchards. Subsequently the pipes became the property of the corporation which asked relief by injunction. The city asserted the right to prevent the use of the pipes, because an ordinance forbade the laying of any pipes in the public streets except by permission of the board of trustees, and permission had not been given. The court declared that an ordinance which would empower the city authorities to refuse to grant, on any terms, the right to occupy the soil covered by a street in any manner not in conflict with the public use, could have no application to the owner of the soil; for such owner was not seeking a privilege to be granted or withheld by the city, but was merely exercising one of the incidents of ownership, which, in dedicating the highway, he had retained in himself.

A decision by a court of first resort in Ohio, fully supports the position of the plaintiff herein, but the same court refused, shortly afterwards, to follow it, and it is in conflict with a later decision of a higher court of the State. [Henry v. Cincinnati, 25 Ohio C. C. R. 178; Butler v. Cincinnati, Ibid, 772; Cincinnati v. Diamond Light Co., 4 Ohio App. 177.]

All the cases cited for plaintiff, except the practically overruled one of Henry v. Cincinnati, lack one fact which, in our judgment, must control the ruling on the proposition that plaintiff and its predecessor, in the capacity of owners of the fee and with the consent of the other owners, might lay and maintain their wires under the alleys. This fact is that both the Holland Company and the plaintiff are franchise-holding corporations, organized under the laws of this State, and to which the State granted the power to occupy the public ways of St. Louis with their appliances only on the condition of the consent of the municipal authorities of the city being given. The sovereignty of a State can

grant or refuse corporate franchises at its will; and in granting them, may impose, on the exercise of them, any terms it chooses. [State v. Stone, 118 Mo. 388; Blair v. Ins. Co., 10 Mo. 559.] And when a corporation accepts franchises with a condition to be performed by the company before exercising them, it is bound to comply with the condition. [Paige v. Railway Company, 178 N. Y. 102; McCormick v. Bank, 165 U. S. 538; Bonham v. Taylor, 10 Ohio, (Wilcox) 108.] The plaintiff is not only maintaining wires in its own fee without the city's consent (in itself unlawful conduct, perhaps); but it is maintaining them, too, in the fee of other proprietors, and thereby, as was said in Cincinnati v. Diamond Light Co., supra, is substituting the consent of the abutters for that of the city, which the law requires it to have. The case last mentioned is like the one before us, in that the wires were placed by permission of the abutting property owners; but the plaintiff itself was not an abutter. The opinion is well reasoned and turns upon a statute very like those which bear on this case.

From whatever source, on a correct interpretation of the statutes, the franchise to lay wires in streets is obtained, whether directly from the State or from the city through a grant of power by the State to municipalities, the condition precedent to the exercise of the franchise is the consent of the city by an ordinance. The plaintiff is in the alley with its wires without such permission and despite its title to the fee and the permission of its adjacent fee-holders, is thereby violating, both the statutes and the municipal ordinance which provides against the placing of "wires, tubes or cables conveying electricity for the production of light, heat or power, unless duly authorized by the municipal assembly."

In the search for apposite precedents, we found a case where the court sanctioned the carrying of electric wires across streets at the height of eighty feet, on the theory that the word "street" in an act of Parliament asserted to permit a board of public works to control the placing of wires in streets, meant only so much space

obove the surface as was within the "area of user", as the opinion styles that portion of the space above what was, or was likely to be, needed for public purposes. The court held it was improbable the space eighty feet above the surface would be thus needed; that the statute should not be interpreted to vest the board with control at that height. [Wandsworth Board of Works v. United Telephone Co., 13 L. R. Q. B. Div. 904.] If the principle of that opinion were to be accepted and applied to depths below the surface, it would not help the plaintiff on this record; for the wires are shown to be only "several feet" underground; a depth where the soil is used for sewers, gas mains, and the like public purposes.

After much reflection and examination of authorities, we have been unable to find any legal principle by which relief can be granted plaintiff, although we fain would do so if plaintiff is willing to abide by the city's requirements.

IV.   An injunction is often denied where the only purpose or effect of it would be to restrain the violation of a merely technical right, from which no damage would ensue.   Particularly is this true when the writ would operate oppressively or contrary to the real justice of the case.   [Hill, Injunctions, 30, 33; 1 Story, Eq. Juris. (11 Ed.) sec. 959, p. 169; 1 Am. & Eng. Ency. Law, 360.]   This doctrine has been recognized by our courts in several decisions.

*Injunction.*

In Warren v. Cavanaugh, 33 Mo. App. 102, an injunction to prevent the opening of a stone quarry was denied, although the act was forbidden by a municipal ordinance, there being no proof the operation of the quarry would be a nuisance.

In Bailey v. Culver, 84 Mo. 531, this court approved a decree denying an injunction to compel the removal of a large building which extended slightly over the boundary of an alley, thereby encroaching on the roadway. It appeared no inconvenience or damage resulted to the plaintiffs from the encroachment, because the slight deflection of the old alley, occasioned by the defendants' building

and authorized by a city ordinance (alleged to be invalid), worked no inconvenience to the plaintiffs. The opinion said a substantial, not an unimportant injury, or one disproportionate to the relief sought, was cause for an injunction to issue in such a case. Further, that none should issue if it would inflict serious damage on the party to be restrained, or would operate oppressively without enuring to the material good of the complainant. The doctrine of a discretion inhering in courts of equity in respect of refusing or granting injunctions was referred to, with the comment that such a court would make no order that would be oppressive or an arbitrary use of its power; but would consider the comparative convenience or inconvenience to the parties the granting or refusal of the writ would cause. The record leaves in uncertainty the points of plaintiff's willingness to accept a permit from the city on the terms prescribed in the ordinances; and of defendants' unwillingness to grant one on those terms. As the facts appear, the latter decision, if made, savors too much of an arbitrary exercise of a technical right for a court of equity to lead countenance to it.

The judgment of the court below in denying a mandatory injunction to defendants is approved, and its order dismissing the cross-complaint is affirmed; but the judgment for plaintiff is reversed and the cause remanded with the direction to dismiss the petition of plaintiff. All concur.