UNION ELECTRIC COMPANY, a corporation, Plaintiff-Appellant,

v.

LAND CLEARANCE FOR REDEVELOPMENT AUTHORITY OF the CITY OF ST. LOUIS, a Body Corporate,

and

The City of St. Louis, Missouri, a Municipal Corporation, Defendants-Respondents.

No. 59746.

Supreme Court of Missouri, En Banc.

Sept. 12, 1977.

William H. Ferrell, St. Louis, for plaintiff-appellant.

Irvin Dagen, Robert C. McNicholas, Associate City Counselor, St. Louis, for defendants-respondents.

HENLEY, Judge.

This is an appeal from a judgment dismissing Union Electric Company's (Union Electric) declaratory judgment action on motion of Land Clearance for Redevelopment Authority of the City of St. Louis (the Authority) and the City of St. Louis (the City), because the petition failed to state a claim on which relief could be granted.

The ultimate relief sought by Union Electric is a declaration that the Authority and the City are obligated to reimburse it for the cost of relocating electric distribution facilities installed many years ago in one block of a public thoroughfare recently vacated by city ordinance to permit its use as part of an urban redevelopment project.

Union Electric is a public utility engaged in the business of manufacture, transmission and distribution of electricity. It has been engaged in the distribution of electricity in the city for more than 50 years and, pursuant to the authority of ordinance No. 12723 adopted by the City in March, 1884,[1]

---

1. Ordinance No. 12723 contains 13 sections. Summarized, it provides:

   1. No facilities for the distribution of electricity shall be placed in a public thoroughfare of the city by any person except upon application filed with the Board of Public Improvements, which Board is "authorized * * * to grant a permit" therefor, "with such restrictions, regulations and qualifications as may be prescribed by said Board."

it has installed and uses for that purpose underground electrical facilities, including manholes, vaults and conduits in that part of Martin Luther King Drive (an east-west thoroughfare) lying between sixth and seventh streets, which area is part of a larger area designated as the DeSoto Carr Urban Renewal Project.

In 1969 the Authority, pursuant to §§ 99.-300 to 99.660[2] (known as the Land Clearance for Redevelopment Authority Law) and certain ordinances of the city, acquired for redevelopment as a part of the DeSoto Carr Urban Renewal Project two city blocks, one of which adjoins the 600 block of Martin Luther King Drive on the north side and the other adjoins it on the south side. This two-block area and that part of Martin Luther King Drive lying between them is designated in the pleadings as "Convention Plaza Plat 2," a part of St. Louis' new Convention Center area.

In October, 1974, the City adopted ordinance No. 56831 vacating the 600 block of Martin Luther King Drive to enable the Authority to utilize it as a part of the urban renewal project.

In February, 1975, the Authority notified Union Electric by letter that this block had been vacated by ordinance and requested that it remove its facilities. In March, 1975, Union Electric informed the Authority by letter that it would remove its facilities, but that it did so "without prejudice to our rights for reimbursement of our costs."

The allegations of Union Electric's petition are, in substance: (1) that it and its predecessor companies have complied with all requirements of ordinance No. 12723, by reason of which it has a franchise and vested property rights; the nature and extent

thereof being "set forth in ordinance 12723 * * * ;" (2) that " * * * has removed its * * * facilities as requested by Authority and, in so doing, incurred relocation costs in the amount of $19,643;" and (3) that it has demanded of the Authority and the City payment of these relocation costs, but payment has been refused. The petition further alleges that Union Electric is entitled to receive payment from the City and the Authority of the costs it incurred in removing and relocating its facilities, because: (1) its franchise is "property" within the meaning of Mo.Const. Art. I, §§ 10, 26 and 28, and the U.S.Const. Amend. XIV, which property "may not be taken unless just compensation is paid * * * "; (2) "ordinance No. 56831, insofar as it requires * * * [Union Electric] to remove its * * * facilities without * * * payment of the costs of * * * [removal and relocation] is invalid" and violates the above constitutional provisions in that "it deprives * * * [Union Electric] of its franchise right to install and maintain underground electrical * * * facilities" in the streets of the City; (3) "ordinance No. 56831 is invalid and unconstitutional, insofar as it requires * * * [Union Electric] to remove its * * * facilities * * * without authorizing the payment of the costs of * * * [removal and relocation] in that it impairs * * * " the obligation of its contract with the City in violation of Mo.Const. Art. I, § 13, and U.S.Const. Art. I, § 10; and (4) ordinance No. 56831 "was instigated and directed by" and "was accomplished for" the benefit of the Authority "for a proprietary, rather than governmental, purpose or function, namely the use of such property for a privately owned and operated hotel."

2. The "right is * * * reserved to the Board * * * at any time to direct any alterations in the location of said * * * [facilities]."

3. "No person * * * shall be entitled to * * * the privileges conferred by this ordinance, except upon the following conditions: " that he file with the City Register his acceptance of the terms of the ordinance and agree that he will (a) file with the city Comptroller annually a statement of gross receipts of his

business and pay to the city Treasury 5% of the amount thereof; and (b) "file with the City Register his * * * penal bond [for $20,000] * * * conditioned that he * * * will comply with all the conditions of this ordinance, or any ordinance which may be hereafter passed regulating the placing of * * * [electrical distribution facilities] in [public thoroughfares] for the purposes named therein."

2. References to sections of the statutes are to RSMo 1969.

The prayer of the petition is that the court declare (1) that Union Electric has a franchise with the City; (2) that ordinance No. 56831 is unconstitutional and void insofar as it requires Union Electric to remove and relocate its described facilities without payment of the expense thereof by the City and Authority; and (3) that Union Electric is entitled to recover the expense of such relocation from the City and Authority.

We are inclined to agree with the trial court that Union Electric's petition does not state a claim on which relief may be granted.

Union Electric has, as it claims, a right to locate its electric distribution facilities in the streets and alleys of the City of St. Louis. The source of the right is, as it states, ordinance No. 12723. This court considered this particular ordinance in *State on Inf. of Jones, ex rel. City of St. Louis v. Light and Development Co. of St. Louis*, 246 Mo. 618, 152 S.W. 67 (banc 1912). Ordinance 12723 is spoken of in that case as granting to anyone who had accepted and complied with its terms, enforceable franchise or contract rights to use the city streets and alleys for the distribution of electricity. 152 S.W. at 75. See also: *State on Inf. of Jones v. West End Light and Power Co.*, 246 Mo. 653, 152 S.W. 76, 80, 81[6, 7] (banc 1912); *City of St. Louis v. Laclede Power and Light Co.*, 347 Mo. 1066, 152 S.W.2d 23 (Mo.1944); *City of Brunswick v. Myers*, 357 Mo. 461, 209 S.W.2d 134 (1948); 39 Am.Jur.2d, Highways, Streets and Bridges, § 236, pp. 616–619.

■ However, this right of Union Electric to use the 600 block of Martin Luther King Drive for the distribution of electricity is not unconditional; it is subject, by express terms of the franchise or contract, to "such restrictions, regulations and qualifications as may be prescribed by said Board." It is subject to a condition clearly expressed in the ordinance on which the rights claimed are based: a reservation of the right to direct relocation of electric distribution facilities installed in a street. In accepting this franchise it also accepted this condition as a part of the contract and

is in no position to complain of its exercise. *City of Brunswick v. Myers*, supra (209 S.W.2d at 137[3]).

■ In light of this agreed-to reservation, it may not reasonably be said that ordinance No. 56831, insofar as its vacation of this block of Martin Luther King Drive resulted in requiring Union Electric to remove its facilities therefrom, was a law impairing the obligation of a contract, the enactment of which would violate Mo. Const. Art. I, § 13 and U.S.Const. Art. I, § 10. *Kansas City Power & Light Co. v. Town of Carrollton*, 346 Mo. 802, 142 S.W.2d 849, 855[12] (1940).

It is said in McQuillin Mun. Corp. (3rd Ed.), vol. 12, § 34.74a, pp. 183–184: "The fundamental common-law right applicable to franchises in streets is that the utility company must relocate its facilities in public streets when changes are required by public necessity * * *, [or] public convenience [and] security require it, * * * at * * * [its] own expense. * * * [But] [t]he general rule that the utility must bear the relocation costs has been held inapplicable where the relocation of its facilities has been necessitated by the municipality's exercise of a proprietary rather than a governmental function or purpose."

Union Electric refers to the allegation of its petition that the 600 block of Martin Luther King Drive was vacated and it was required to relocate its facilities to permit the use of that area by a privately owned and operated hotel, a use it contends was for a proprietary purpose. In this connection it further contends that requiring it to relocate its facilities at its own expense is a "taking" of its property without compensation in "violation of the federal and state constitutions." It relies on *City of Los Angeles v. Los Angeles Gas & Electric Corporation*, 251 U.S. 32, 40 S.Ct. 76, 64 L.Ed. 121 (1919); *City of Baltimore v. Baltimore Gas and Electric Co.*, 232 Md. 123, 192 A.2d 87 (1963); and *City of Cincinnati v. Cincinnati & Suburban Telephone Co.*, 123 Ohio St. 174, 174 N.E. 586 (Ohio 1930) as supporting its position.

In the Los Angeles case the city was engaged in establishing a lighting system of

its own and ordered the Gas and Electric Corporation to remove at its expense fixtures it had placed in the streets by virtue of rights it claimed were guaranteed by its franchise. The court held that this uncompensated taking of what belonged to one lighting system in order to make way for another was forbidden by the due process clause of the Fourteenth amendment.

In the Cincinnati case the court held that the city could not require street car tracks to be located in a street over an underground telephone conduit system, which would thereby have to be moved, without reimbursing the telephone company for the cost of removal. 174 N.E. at 587.

The Baltimore case involved an order by the city directing the Gas and Electric Co. to remove and relocate its facilities from streets vacated to permit their use for the purposes, among others, of constructing (1) a housing project by the Housing Authority and (2) a market by the city. The court held that the city was liable for the cost of removing the facilities from the area where the city market was to be located, because the operation and maintenance of a market puts the city in competition on an equal basis with the utility and therefore its order to relocate was the exercise of a "proprietary" power. However, as to the housing project to be built by the Housing Authority, a public body exercising essential governmental functions according to the Maryland statutes, the court held the utility could be required to bear the cost of relocating its facilities, because in requiring removal of the electric facilities to make the vacated street available for the housing project the authority and the city were performing a governmental function. 192 A.2d at 91.

■ This relocation of facilities required of Union Electric was necessitated by an urban renewal project: the DeSoto Carr Urban Renewal Project said by Union Electric's petition to include the Convention Plaza and a privately owned and operated hotel as a part of St. Louis' new downtown Convention Center to be developed under authority of the Land Clearance for Redevelopment Authority Law. The primary purpose of the project, the redevelopment or renewal of what is implicitly a blighted area of the city, has been declared legislatively to be a public purpose. The vacation of this block of the city thoroughfare and the requirement that Union Electric remove its facilities therefrom to make the thoroughfare available for use as a part of this project were acts of the City and the Authority in the exercise of a governmental rather than a proprietary function. *City of Baltimore v. Baltimore Gas and Electric Co.*, supra; *State on Inf. of Dalton v. Land Clearance for Redevelopment Authority of Kansas City*, 364 Mo. 974, 270 S.W.2d 44 (banc 1954); *Annbar Associates v. West Side Redevelopment Corp.*, 397 S.W.2d 635 (Mo. banc 1965); *In Matter of Urban Renewal Agency of City of Eugene v. Pacific Northwest Bell Telephone Co.*, 542 P.2d 908, 911–912 (Or.App.1975); §§ 99.300 to 99.660, supra; St. Louis ordinance No. 56831, § 1. The requirement that Union Electric remove its facilities at its expense is not a "taking" of its property or a denial of due process within the meaning of the provisions of the federal and state constitutions referred to in Union Electric's petition. Under the facts alleged it has no cause of action.

The judgment is affirmed.

All concur.