CITY OF BRIDGETON, Appellant,

v.

MISSOURI–AMERICAN WATER CO., Respondent.

No. SC 87744.

Supreme Court of Missouri, En Banc.

April 17, 2007.

E. Robert Schultz, III, Chesterville, Carl B. Hillermann, III, Lashly & Baer, St. Louis, MO, Barry Sullivan, Gabrielle Sigel, Jenner & Block, Chicago, IL, for Appellant.

Carl J. Pesce, Paul D. Lawrence, Thompson Coburn LLP, St. Louis, MO, for Respondent.

Paul E. Martin, Kevin M. O'Keefe, Clayton, for Amicus Curiae City of Clayton, City of Hazelwood and City of Bellefontaine Neighbors.

James H. White, St. Louis, MO, for Amicus Curiae St. Louis County Municipal League and City of Hazelwood.

James P. Gamble, St. Louis, MO, for Amicus Curiae Missouri Growth Association.

Kevin A. Thompson, Jefferson City, for Amicus Curiae Missouri Public service Commission.

Christina Baker, Jefferson City for Amicus Curiae Office of Public Counsel and Missouri Industrial Energy Consumers.

Diana M. Vuylsteke, Bryan Cave LLP, John F. Medler, Jr., St. Louis, for Amicus Curiae Southwestern Bell Telephone, L.P., d/b/a AT&T Missouri, et al.

Randy E. Hayman, St. Louis, for Amicus Curiae Metropolitan St. Louis Sewer District.

David P. Abernathy, St. Louis, for Amicus Curiae Laclede Gas Company.

James C. Swearengen, Jefferson City, for Amicus Curiae Missouri Gas Energy and The Empire District Electric Company.

Brian J. Didier, Kansas City, for Amicus Curiae Aquila, Inc.

Michael F. Barnes, St. Louis, for Amicus Curiae AmerenUE.

Douglas Walther, Dallas, TX, for Amicus Curiae Atmos Energy Corporation.

Curtis Blanc, Kansas City, for Amicus Curiae Kansas City Power & Light Company.

Chuck Caisley, Jefferson City, for Amicus Curiae Missouri Energy development Association.

Marvin O. Young, Warson Woods, MO, for Amicus Curiae City of Warson Woods.

Helmut Starr, St. Louis, for Amicus Curiae City of webster Groves.

WILLIAM RAY PRICE, JR., Judge.

The City of Bridgeton ("Bridgeton") plans to expand and improve a city street called Taussig Road. Bridgeton's costs for the project will be paid by a private developer, TRiSTAR Business Communities, LLC ("TRiSTAR"), in exchange for the city's approval of a TRiSTAR project. The Taussig Road project requires the relocation of certain water mains, pipes, and fire hydrants installed and maintained by Missouri–American Water Company ("Missouri–American"). This lawsuit concerns whether Bridgeton or Missouri–American must pay the costs of relocating the water facilities. The trial court granted summary judgment in favor of Missouri–American. The judgment is reversed and remanded for further proceedings.

## I. Factual and Procedural Background

### A. The Franchise and License Agreements

Bridgeton, Missouri, is a municipality in St. Louis County located between Lambert–St. Louis International Airport and the city of St. Charles. Taussig Road is a Bridgeton thoroughfare. From its intersection with St. Charles Rock Road in the southwest, it runs northeast until it becomes Missouri Bottom Road just south of Missouri Route 370.

Missouri–American is a public utility company that provides water service to customers in Bridgeton and elsewhere in Missouri. In 1902, the St. Louis County Court granted to Missouri–American's predecessor, the Missouri Water, Light & Traction Company, a franchise (the "1902 County Franchise") that provided as follows:

> Permission, authority and license is hereby given to the said Missouri Water, Light & Traction Company, its successors and assigns, to lay and maintain mains and pipes, along and across all the public highways as they now exist, or may hereafter be laid out, of the County of St. Louis.

At that time, Taussig Road was a St. Louis County road. In 1951, Bridgeton passed an ordinance granting to another Missouri–American predecessor, the St. Louis County Water Company, a twenty-year franchise (the "Bridgeton Franchise") to use "the streets, avenues, alleys, parks and other public places within the Town as now bounded, and within any future extensions of its limits, for the purpose of putting down, laying, maintaining or using water mains, water pipes, fire hydrants and other appliances."

In 1956, Bridgeton annexed Taussig Road. All the Missouri–American facilities in the Taussig Road right-of-way and the adjoining property were installed after the annexation. When the Bridgeton Franchise expired in 1971, it was not renewed and no new franchise was granted. Missouri–American has continued to supply water to the city and pay gross receipts

taxes for doing business in the city, which Bridgeton has accepted.

In 1967, the Norfolk and Western Railway Company and the St. Louis County Water Company executed a "License for Underground Facilities," in which the railway granted to the water company "the license and permission to construct, operate, use and thereafter maintain or remove an underground 20 inch pipe line, for the handling of water" over two strips of land adjoining the Taussig Road right-of-way. The agreement provides that when the railway desires to make changes to the premises, the water company must relocate its pipe line at its own expense to accommodate the changes. The agreement is silent on the issue of termination. It expressly provides that it "shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto, respectively." Bridgeton now owns the affected land. It also owns several other parcels adjoining the Taussig Road right-of-way, including land known as Parcels 21 and 22, that contain Missouri–American facilities.

### B. The Taussig Road Project

For some time, Bridgeton has intended to improve Taussig Road, but has been unable to fund the needed improvements. Mayor Conrad Bowers stated in an affidavit that Taussig Road is narrow and congested. He further stated that Taussig Road needs to be enlarged to increase safe travel speeds, to enhance the safety of motorists, and to address storm water runoff problems.

Similarly, Doug Shatto, president of Crawford Bunte Brammeier Traffic Engineering and Transportation Planning, stated in his affidavit that Taussig Road is substandard and in need of modification and/or reconstruction. According to Shatto, Taussig Road's problems include "a narrow pavement cross-section, no shoulders, insufficient lateral clearance from trees and utility poles, a single-lane underpass of a railroad viaduct[,] uneven pavement surfaces, skewed intersections[,] and substandard horizontal and vertical curves that limit sight distance and safe travel speeds." Shatto opined that "[r]egardless of any new or future development within this area, Taussig Road is in need of improvement."

In the late 1990s, TRiSTAR, a private developer, moved forward on plans to develop an industrial park north of Route 370. The development would be entirely within the city limits of Hazelwood, a municipality neighboring Bridgeton. Shatto's firm and another traffic consulting firm, Wells & Associates, conducted independent traffic analyses and concluded that TRiSTAR's development would add relatively little traffic to Taussig Road.

TRiSTAR's project plans included construction of a new Route 370 interchange, part of which would be within Bridgeton city limits. The Missouri Department of Transportation required TRiSTAR to obtain the approval of all municipalities affected by the proposed interchange. In 1998, TRiSTAR complied by seeking Bridgeton's approval for the proposed interchange construction. Bridgeton offered its approval on the condition that TRiSTAR help finance the Taussig Road improvements. TRiSTAR agreed, and the parties executed a written agreement memorializing the terms of the deal on October 20, 1999.

The Taussig Road improvements require relocation of certain Missouri–American facilities along Taussig Road. At some time after Bridgeton and TRiSTAR executed the October 20, 1999, agreement, but before June 26, 2003, Bridgeton offered Missouri–American the opportunity to relocate its facilities within the new Taussig Road

right-of-way under a license agreement with Bridgeton. Missouri–American refused to relocate unless Bridgeton paid it over $500,000.

The mayor and city council of Bridgeton passed a resolution on July 2, 2003, stating that "Taussig Road is narrow, congested and in need of improvements to increase its size, capacity to handle vehicles of all sizes, speed of travel, and the safety of motorists using Taussig Road." The city council members found that Bridgeton's actions to expand and improve Taussig Road were "public governmental acts in the public interest and safety to serve the traveling public [and] encourage business and industrial activity and growth." The city council members directed the mayor and staff of Bridgeton to "take all lawful and proper actions to carry out the expansion of Taussig Road" and empowered them "to revoke the permission for any person, firm or utility to locate facilities or property on or under property owned by the City of Bridgeton, and to otherwise effectuate the lawful removal of such properties or facilities interfering with the construction and completion of the Taussig Road improvements."

In May 2004, Bridgeton filed a petition in the circuit court, asserting claims of trespass and ejectment against Missouri–American. Bridgeton alleged that Missouri–American had no authority to possess or use the land along Taussig Road, but stated that Bridgeton remained willing to grant Missouri–American a license for its facilities within the improved Taussig Road right-of-way. Bridgeton sought damages and an order requiring Missouri–American to remove the affected facilities or relocate them at its expense. Missouri–American filed a motion for summary judgment, which the circuit court sustained. This Court ordered transfer of the case after opinion by the court of appeals. Mo. Const. art. V, sec. 10.

## II. Standard of Review

■ The decision of whether or not it is proper to grant summary judgment is a question of law that is reviewed de novo. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is appropriate when a party establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6).

## III. Issues on Appeal

Two basic questions must be answered in order to resolve this dispute: first, by what right does Missouri–American maintain its water mains, pipes, and fire hydrants on land located in Bridgeton, and second, how do those rights bear upon the cost of relocating Missouri–American's facilities. These questions must be answered in relation to water facilities located: (A) within the Taussig Road right-of-way; and (B) on two categories of Bridgeton-owned land adjoining the right-of-way: (1) land previously owned by the Norfolk and Western Railway Company and covered by the 1967 License for Underground Facilities, and (2) land known as Parcels 21 and 22.

### A. *Facilities Within the Taussig Road Right-of-way*

#### 1. Missouri–American's Right to Maintain Facilities

■ Missouri–American, through its predecessors, originally obtained franchise rights from St. Louis County "to lay and maintain mains and pipes, along and across the public highways as they now exist, or may hereafter be laid out, of the County of St. Louis." When that franchise

was granted, Taussig Road was a public highway of St. Louis County. However, before any mains or pipes were laid along Taussig Road, it was annexed by Bridgeton. Under sections 71.520 and 393.010, RSMo 2000, "municipal authorities of the state are vested with the prerogative to grant or refuse permission, in their discretion, to [utility companies] to place their appliances in the public ways, either above or below ground." *Holland Realty & Power Co. v. City of St. Louis*, 282 Mo. 180, 221 S.W. 51, 54 (1920). For the purposes of this dispute, the power to grant franchise rights in Taussig Road was transferred from St. Louis County to Bridgeton upon the city's annexation. Missouri–American's rights in the Taussig Road right-of-way thus hinge upon the franchise granted to it by Bridgeton.[1] *See Mo. Pub. Serv. Co. v. Platte–Clay Elec. Coop., Inc.*, 407 S.W.2d 883, 889–94 (Mo. 1966); *Dixie Elec. Membership Corp. v. City of Baton Rouge*, 440 F.2d 819, 822 (5th Cir.1971).

■ The Bridgeton Franchise was granted in 1951 and was limited to twenty years. "[W]hen the city limits the life of the franchise granted to twenty years, as it must, and that period expires, the privilege of so using the city's public places comes to an end. The continued use is illegal. The corporation acts outside of its granted powers." *State ex inf. McKittrick ex rel. City of California v. Missouri Utilities Co.*, 339 Mo. 385, 96 S.W.2d 607, 613 (1936); *accord* 12 Eugene McQuillin, The Law of Municipal Corporations sec. 34:69 (3d ed. 2006) ("Generally, upon the expiration of a municipal franchise granted to a public utility, there is no longer any contractual relationship between the municipality and the utility.").

■ Under this general rule, the relationship between Bridgeton and Missouri–American ended in 1971, when the Bridgeton Franchise expired, because it was not renewed and no new franchise has been granted. Missouri–American could have removed its facilities from Bridgeton, and Bridgeton could have demanded that it do so. *See Bowers v. Kansas City Pub. Serv. Co.*, 328 Mo. 770, 41 S.W.2d 810, 812 (1931).

An exception to the general rule occurs, however:

> when the parties to a franchise continue to perform after the expiration of the franchise in the same manner they did when the franchise was formally in effect. If a company continues to operate after its franchise has expired, it does so under an implied contract, cancelable upon reasonable notice, under the same terms and conditions as the franchise ordinance.

12 McQuillin, *supra*, sec. 34:69. In *Bowers v. Kansas City Public Service Co.*, 328 Mo. 770, 41 S.W.2d 810 (1931), a railway company operated street cars pursuant to a municipal franchise. After the franchise expired, the company continued to operate its street cars on the public streets and bridges, repair the tracks and bridges, pay the street railway tracks tax, and pay the annual park tax.

> In other words, they acted as though the franchise was still in existence, and for that reason they should not be heard to say they were not exercising it. Since [the company] treated the franchise as a live instrument, acted thereunder, and received its benefits, they should not be permitted to avoid the obligations it created.

---

1. The Court does not address whether this ruling would differ if the facilities were laid prior to annexation by the city.

*Id.* at 812. Courts in other states have similarly held that when a utility company continues to furnish service that the town accepts after the franchise expires, an implied contract arises, with the same terms and conditions as the franchise, that may be terminated upon reasonable notice. *See Vill. of Lapwai v. Alligier,* 69 Idaho 397, 207 P.2d 1025, 1027 (1949); *Vill. of Orland Hills v. Citizens Utilities Co. of Ill.,* 347 Ill.App.3d 504, 282 Ill.Dec. 966, 807 N.E.2d 590, 595–96 (2004); *Baker v. City of Topeka,* 231 Kan. 328, 644 P.2d 441, 444–45 (1982); *City of Richmond v. Chesapeake & Potomac Tel. Co. of Va.,* 205 Va. 919, 140 S.E.2d 683, 686 (1965).

Both Bridgeton and Missouri–American have behaved as though the Bridgeton Franchise were still in force, despite its expiration. Although Bridgeton has demanded that Missouri–American relocate certain facilities along Taussig Road, it has not given notice of termination of the entire franchise relationship. Under the exception to the general rule, the parties are operating under an implied contract, with the same terms and conditions of the Bridgeton Franchise, cancelable upon reasonable notice. The franchise allows Missouri–American to use "the streets, avenues, alleys, parks and other public places within the Town ... for the purpose of putting down, laying, maintaining or using water mains, water pipes, fire hydrants and other appliances." Missouri–American has present authority to lay and maintain facilities within the Taussig Road right-of-way.[2]

### 2. Responsibility for Cost of Relocating Facilities

 The Bridgeton Franchise does not explicitly address the issue of who must pay for the water facilities relocation requested by the city. Accordingly, this question is governed by the common-law rule stated in *Union Electric Co. v. Land Clearance for Redevelopment Authority of St. Louis,* 555 S.W.2d 29 (Mo. banc 1977). In that case, the city of St. Louis had vacated the 600 block of Martin Luther King Drive for its use in an urban redevelopment project. 555 S.W.2d at 31. The land clearance for redevelopment authority requested Union Electric Company to move its facilities in that block. *Id.* Union Electric sought a declaratory judgment that the city was obligated to reimburse it for the costs of relocating its facilities. *Id.* at 30. The Court stated:

> The fundamental common-law right applicable to franchises in streets is that the utility company must relocate its facilities in public streets when changes are required by public necessity, or public convenience and security require it, at its own expense.

*Id.* at 32.

Union Electric was required to relocate its facilities, at its expense, because the relocation was made necessary by the urban renewal project. *Id.* at 33.

> The primary purpose of the project, the redevelopment or renewal of what is implicitly a blighted area of the city, has been declared legislatively to be a public purpose. The vacation of this block of the city thoroughfare and the requirement that Union Electric remove its facilities therefrom to make the thoroughfare available for use as a part of this project were acts of the City and the Authority in the exercise of a govern-

---

**2.** There can be no doubt that the parties would be better served by a franchise agreement with specific provisions and a specific term of years. This Court does not speculate on the relative risk to the parties regarding termination by one or the other.

mental rather than a proprietary function.

*Id.*

The same situation exists here. The primary purpose of the Taussig Road project was declared legislatively, by a resolution of the mayor and city council of Bridgeton, to be a public purpose. The resolution stated that Bridgeton's actions to improve Taussig Road were "public governmental acts in the public interest and safety to serve the traveling public [and] encourage business and industrial activity and growth," and that the improvements were necessary "to increase its size, capacity to handle vehicles of all sizes, speed of travel, and the safety of motorists using Taussig Road."

Missouri–American argues that the resolution cannot be considered a valid legislative declaration of public purpose under *Union Electric* because the resolution was passed almost four years after Bridgeton and TRiSTAR executed their agreement concerning the Taussig Road project. However, the timing is irrelevant. The purpose of the Taussig Road project was for the legislative body to determine. The Court respects that authority and normally does not look behind such legislative determinations. *See Union Elec.*, 555 S.W.2d at 32; *accord Tierney v. Planned Indus. Expansion Auth. of Kansas City*, 742 S.W.2d 146, 150 (Mo. banc 1987) (the legislative body's authority controls "unless its decision is shown to be so arbitrary and unreasonable as to amount to an abuse of the legislative process"); *State ex inf. Danforth ex rel. Farmers' Elec. Coop., Inc. v.*

*State Envtl. Improvement Auth.*, 518 S.W.2d 68, 74–75 (Mo. banc 1975). There is no evidence in the record that could establish any arbitrary and unreasonable acts on the part of Bridgeton sufficient to constitute abuse of the legislative process.

The resolution establishes that the changes requiring relocation of certain Missouri–American facilities in the Taussig Road right-of-way "are required by public necessity, or public convenience and security require it." *Union Elec.*, 555 S.W.2d at 32. Missouri–American is responsible for relocating its facilities there at its own expense. It is not entitled to judgment as a matter of law with respect to the facilities located within the Taussig Road right-of-way.[3]

### B. Facilities on Bridgeton–Owned Land Adjoining the Taussig Road Right-of-way

#### 1. Property Covered by the 1967 Norfolk and Western Railway Company

**"License for Underground Facilities"**

In 1967, the Norfolk and Western Railway Company granted a license to the St. Louis County Water Company to lay underground facilities in railway land. The agreement provides that it "shall inure to the benefit of and be binding upon the successors and assigns of the parties hereto, respectively." It contains no termination provision. As the present owner of this land, Bridgeton is the successor to the railway. Missouri–American is the

---

**3.** This Court expresses no opinion on the decision in *Home Builders Ass'n of Greater St. Louis v. St. Louis County Water Co.*, 784 S.W.2d 287 (Mo.App.1989). In that case, there was no legislative determination that the primary purpose of the project was a public one. *See id.* at 287–89. Further, the actions of private developers triggered the need for the road improvements. *Id.* at 292–93. The court found that "[w]hile the right-of-way improvements incidentally accomplish a public purpose, they primarily accomplish private sector purposes, that is, providing convenience and security to owners, lessees, customers, and residents of the Developer's projects." *Id.* at 291.

successor to the St. Louis County Water Company. The agreement controls Missouri–American's rights with respect to this property.

Paragraph four of the agreement provides:

> It is understood and agreed by and between the parties hereto that if at any time or times hereafter the Railway shall desire to construct railroad tracks of any use or nature including spur tracks over said pipe line *or make any changes whatever in, to, upon, over or under the premises owned,* controlled or leased by the Railway, and crossed or in any way affected by said pipeline, then the *Water Company shall, at its own cost and expense,* upon thirty (30) days notice in writing to that effect from the Railway *make such changes in the location or construction of said pipe line* as in the judgment of the Chief Engineer of Railway may be necessary to accommodate any future construction, improvements or changes of the Railway.

(emphasis added). Bridgeton has indicated its desire to make changes to the premises crossed by the pipe line. Upon proper notice, Missouri–American is obligated to relocate its pipe line in this property "at its own cost and expense" to accommodate the changes that paragraph four permits Bridgeton to make. Missouri–American is not entitled to judgment as a matter of law with respect to the facilities covered by the 1967 Norfolk and Western Railway Company agreement.

### 2. Parcels 21 and 22

■ In its motion for summary judgment, Missouri–American did not separately address Parcels 21 and 22. In its response to the motion for summary judgment, Bridgeton asserted that it owned Parcels 21 and 22, that they were not subject to any franchise agreement, easement, or license, and that Bridgeton, as the owner, could order Missouri–American to relocate its facilities in those parcels. In support of that claim, Bridgeton attached an affidavit of Terry Morris, owner of T.H. Morris Title Services, LLC, who researched the property rights in the parcels of land impacted by the Taussig Road project. Missouri–American failed to mention Parcels 21 and 22 in its reply in support of the motion for summary judgment.

■ Missouri–American first argues that Bridgeton waived this argument by failing to raise it in the trial court. However, Bridgeton did raise this argument by asserting, in its response to the summary judgment motion, that it owned the parcels and that Missouri–American had no right of possession there.

Missouri–American argues in the alternative that: (1) even if Bridgeton owns Parcels 21 and 22, Missouri–American has a prescriptive easement there, and (2) the pipe running through the parcels was installed in the right-of-way, and Bridgeton has not shown that the pipe is no longer in the right-of-way. In its reply, Missouri–American did not admit or deny Bridgeton's assertions with respect to Parcels 21 and 22. Missouri–American also failed to set forth any facts regarding a prescriptive easement there or the location of the facilities within the right-of-way. Because Terry Morris's affidavit was not contradicted, it is taken as true for the purposes of the summary judgment motion. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The record is insufficient to establish that Missouri–American is entitled to judgment as a matter of law with respect to Parcels 21 and 22.

## IV. Conclusion

The judgment is reversed and remanded for further proceedings.

All concur.